## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JOHN VONDRAK,

       Plaintiff,

vs.                                                                                       No. CIV-05-0172 JB/LFG

CITY OF LAS CRUCES, POLICE OFFICER,
CINDY MCCANTS and NATHAN KRAUSE
Individuals and employees of the Las Cruces Police
Department, and CITY OF LAS CRUCES,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendants' Motion for Summary Judgment, filed March 2, 2006 (Doc. 52)("Summary Judgment Motion"). The Court held a hearing on this motion on August 8, 2006. The primary issues are: (i) whether the Defendants are entitled to summary judgment, as a matter of law, on Plaintiff John Vondrak's 42 U.S.C. § 1983 claims for illegal arrest for Driving Under the Influence ("DUI") when the only evidence available to the arresting officer is the Plaintiff's statement that he had "one beer three hours ago;" (ii) whether the Defendants are entitled to summary judgment on the claims for excessive use of force when what is alleged is that handcuffs were placed tight enough to cause permanent nerve damage; and (iii) whether the Defendants are entitled to summary judgment on the claims for denial of medical treatment when the Plaintiff presents no evidence of an officer's culpable state of mind. Because the Court finds that the Defendants Cindy McCants and the City of Las Cruces are not entitled to summary judgment with respect to Vondrak's federal illegal arrest claims, that the Defendant Nathan Krause is entitled to summary judgment on Vondrak's federal illegal arrest claim, that

McCants, Krause, and the City are not entitled to summary judgment on Vondrak's federal excessive

use of force claims, and that McCants, Krause, and the City are entitled to summary judgment on

Vondrak's federal inadequate medical attention claims, the Court will grant the Defendants'

summary judgment motion in part and deny it in part.

## FACTUAL BACKGROUND[1]

The Las Cruces Police Department established a sobriety checkpoint at the corner of Valley

and Hayner in Las Cruces, New Mexico on August 18, 2003.  See Defendants' Memorandum in

Support of Their Motion for Summary Judgment, Exhibit F2, City of Las Cruces Interdepartmental

Memorandum, filed March 2, 2006 (Doc. 53)("Summary Judgment Memo").  Vondrak approached

the checkpoint just after 10:00 p.m.  See Summary Judgment Memo, Exhibit B1, Crime/Incident

Report at 2 (entered August 19, 2003)("Police Report").  At the checkpoint, Vondrak admitted to

an unidentified officer that he had consumed alcohol earlier in the evening.  See Summary Judgment

Memo, Exhibit A, Deposition of John G. Vondrak at 19:8-12 (Vondrak)(taken September 2,

2005)("Vondrak Depo").

---

[1] The Plaintiff's response to the Defendants' Motion for Summary Judgment violates local
rule 56.1(b) of the Local Civil Rules of the United States District Court for the District of New
Mexico.  Local rule 56.1(b) provides:

> A memorandum in opposition to the motion must contain a concise statement of the
> material facts as to which the party contends a genuine issue does exist.  Each fact
> in dispute must be numbered, must refer with particularity to those portions of the
> record upon which the opposing party relies, and must state the number of the
> movant's fact that is disputed.  All material facts set forth in the statement of the
> movant will be deemed admitted unless specifically controverted.

D.N.M.LR-Civ 56.1(b).  The Plaintiff's response does not refer to the Defendants' statement of facts
by number and rarely refers with particularity to portions of the record.  Nevertheless, the Court has
attempted to note where the Plaintiff's response contests the Defendants' statement of facts and
includes additional facts, where the record supports such.

Vondrak testified that he told the unidentified officer that he had purchased a beer three or four hours earlier and that he had drank about a third of it.  See id.  Vondrak alleges that the unidentified officer directed him to pull his car over to the side of the road.  See id.  Vondrak next encountered McCants, an officer with the Las Cruces Police Department.  See id. at 19:19-20 (Vondrak).

McCants alleges that she asked Vondrak if he had consumed any alcohol and that he said yes.  See Police Report at 2.  McCants alleges that she then requested Vondrak's driver's license, insurance, and registration, and that she advised him to pull his car over.  See id.  McCants alleges that she next asked Vondrak to step out of his car and that he admitted to drinking alcohol.[2]  See id.  Vondrak told McCants that he had drank "one beer three hours ago."  Summary Judgment Memo, Exhibit B2, Transcription of Vondrak/McCants Tape at 1:4-10 (Vondrak)(recorded August 18, 2003)("Tape").[3]

---

[2] While the parties did not mention in their statements of material fact -- in their briefing, or at oral argument -- any smell of alcohol, the Court noted, as it prepared this opinion and order, that the Police Report states, after noting that McCants asked Vondrak to step out of his car, that McCants could smell a strong odor of alcoholic beverage.  The Court believes that McCants' perception of such an odor could bear on the question whether McCants' had reasonable suspicion to conduct field-sobriety tests.  Because the Police Report's statement concerning the strong odor of alcoholic beverage was not included in the parties' briefing, in either parties' statements of facts, or at oral argument, the Court will not consider it a fact among those that it is to consider in deciding this summary judgment motion and will not explore how that fact may have impacted a reasonable suspicion analysis.  See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998)("The district court has discretion to go beyond the referenced portions of these materials, but is not required to do so.  If the rule were otherwise, the workload of the district courts would be insurmountable and summary judgment would rarely be granted.")(citation omitted).  See also Mitchell v. City of Moore, Okla., 218 F.3d 1190, 1199 (10th Cir. 2000)("[W]here the burden to present such specific facts . . . was not adequately met below, we will not reverse a district court for failing to uncover them itself.")(citing Adler v. Wal-Mart Stores, Inc., 144 F.3d at 672).

[3] The transcribed tape comes from a McCants' belt recorder, which she turned on shortly after her encounter with Vondrak began.

McCants asked Vondrak if he wanted to take a field-sobriety test; he replied, "absolutely." Id. at 1:16-22.  McCants asked Vondrak if he had any physical ailments that would cause him any difficulty walking or standing, and whether he was in "fairly good health."   Id. at 1:25-2:3 (McCants).  Vondrak responded that he had no problems and that he was in "excellent health."  Id. at 2:2-4 (Vondrak).

McCants explained the one-legged stand test to Vondrak.  See id. at 2:5-3:8 (McCants). Vondrak stated that "[he] probably couldn't even do that if "he'd never had a drink."  Id. at 2:17-18 (Vondrak).  McCants perceived Vondrak's statement as an attempt, by a man who knew he was impaired, to justify his failure of the sobriety test.  See Summary Judgment Memo, Exhibit B, Affidavit of Cindy McCants at 2 (dated March 1, 2006)("McCants Affidavit").

Vondrak had difficulty doing the one-legged stand test correctly; McCants perceived that he had failed it.  See Affidavit of John Vondrak in Opposition to Defendants Motion for Summary Judgment in Support of his Request for Trial by Jury at 2 (dated March 4, 2006)(Doc. 59)("Vondrak Affidavit"); Police Report at 3; McCants Affidavit at 2.  McCants next explained the walk-and-turn test to Vondrak.  See Tape at 4:13-18 (McCants).  Vondrak attempted the walk-and-turn test, and McCants perceived that he had failed it.  See Vondrak Affidavit at 2; Police Report at 3; McCants Affidavit at 2.  Vondrak alleges that he did not understand what he was supposed to do to complete the test successfully.  See Tape at 5:2-17 (Vondrak); Police Report at 3.

McCants then administered the horizontal gaze nystagmus test to Vondrak.  See id. at 5:22-6:13 (McCants); Police Report at 3.  McCants perceived that Vondrak failed that test.  See McCants Affidavit at 2; Police Report at 3.  Based on Vondrak's performance on the three field-sobriety tests and his admission of having consumed alcohol, McCants believed that Vondrak had committed the crime of DUI, see McCants Affidavit at 2, and arrested him for such, see Tape at 6:16-20

-4-

(McCants); Police Report at 3.

McCants handcuffed Vondrak at the checkpoint when she placed him under arrest.  See McCants Affidavit at 2-3.  Vondrak did not cry out when McCants put the handcuffs on.  See Vondrak Depo at 29:2-4 (Vondrak).  McCants alleges that Vondrak did not complain about the handcuffs when she put them on.  See McCants Affidavit at 3.  McCants alleges that she employed normal handcuffing procedure when she placed handcuffs on Vondrak.  See id. at 3.

After Vondrak had been handcuffed, upon McCants' request, Krause, also an officer with the Las Cruces Police Department, performed a pat-down of Vondrak and an inventory search of his car.  See Summary Judgment Memo, Exhibit C, Affidavit of Nathan Krause at 1 (dated March 1, 2006)("Krause Affidavit").  Krause alleges that Vondrak did not complain about the handcuffs at any time while he was at the scene.  See id. at 1-2.  Vondrak testified that he told McCants and Krause, or perhaps another officer, a half dozen times that the handcuffs were too tight and that they were hurting his wrists.  See Vondrak Depo at 27:5-14 (Vondrak).  Vondrak also testified that he told McCants and the other officer riding in the patrol car with them to the police station that the handcuffs were too tight.  See id. at 30:3-10 (Vondrak).  Further, Vondrak testified that he told McCants that the handcuffs were too tight, that it felt like they were cutting into his wrists, and that it felt like his wrists were bleeding.  See id. at 28:5-10 (Vondrak).

Vondrak alleges that he made several requests to have the handcuffs loosened during his period of detention, and that his requests were ignored.  See Vondrak Affidavit at 3.  McCants alleges that nothing occurred over the course of the evening that would have led her to believe that Vondrak would suffer injury from the handcuffs.  See McCants Affidavit at 3.  A Las Cruces Police Department employee took photographs of Vondrak's wrists on August 19, 2003.  See Summary Judgment Memo, Exhibit D, Affidavit of Ashley Perea (dated March 1, 2006).  The photographs do

not show that Vondrak's wrists were cut or scraped.  See Summary Judgment Memo, Exhibit D1, Photographs of John Vondrak taken August 19, 2003.

McCants alleges that, at the police station, two IR-5000 and one RBT tests were administered to determine Vondrak's blood-alcohol level.  See Police Report at 3-4.  Vondrak alleges that he was given four tests at the police station.  See Vondrak Affidavit at 3.  All of the tests taken at the police station provided blood-alcohol level readings of .00.  See Police Report at 3; Vondrak Affidavit at 3.  Based upon the results of those tests, McCants charged Vondrak with DUI to the slightest degree, and released him on his own recognizance.  See Police Report at 4.

Following his release, Vondrak was taken to the Mountain View Regional Medical Center.[4] See Plaintiff's Reply Memorandum of Law, Exhibit D, Mountain View Regional Medical Center Records (dated August 19, 2003).  There, Vondrak was given a toxicology screening, which came back negative for alcohol and drugs.  See id.  While at the Medical Center, Vondrak also complained

---

[4] The Court will treat the factual record before it as including Vondrak's medical records from Mountain View Regional Medical Center and Dr. Pawan Jain's and Dr. Wayne Lindsey's reports concerning Vondrak's wrists.  The Court, finding those materials to be determinative with respect to Vondrak's excessive use of force claims, considering Vondrak's request that he be permitted leave to submit any required authentication, see Response to Defendants Motion to Strike and Objections to Plaintiff's Summary Judgment Exhibits and Cross Motion to Defer Formal Authentication of Medical Reports to Trial and For Waiver of Exhibit Page Limitations at 2, filed April 27, 2006 (Doc. 64), and noting that Vondrak should not have difficulty securing the necessary authentication, will consider the medical records and reports as part of the factual record.  With respect to William Gaut's expert report, because  rule 703 of the Federal Rules of Evidence allows an expert to rely on inadmissible facts in reaching an opinion or inference, but does not allow the proponent of the expert testimony to use the expert as a conduit for a party to get in otherwise inadmissible evidence, the Court will not consider those portions of Gaut's report discussing statements of Jain, Lindsey, and the Mountain View Regional Medical Center that are hearsay.  See Fed. R. Evid. 703 ("Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference . . . .").  In addition, the Court will not consider portions of Vondrak's pleadings and affidavit that purport to relay what Drs. Jain and Lindsey, and medical staff at the Mountain View Regional Medical Center, told Vondrak, because such pronouncements are hearsay.  See Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995)(stating that hearsay cannot be considered in ruling on a summary judgment motion).

of pain and numbness in his hands.  See id.  Vondrak was treated for sprained wrist and contusions.

See id.  Dr. Scot Martin, a physician who treated Vondrak, noted that there were multiple superficial

abrasions and contusions on both wrists.  See id.

Vondrak alleges that he suffered wrist pain after his arrest, see Vondrak Affidavit at 3, that

he took Extra Strength Tylenol for the pain, see Vondrak Depo at 93:8-94:6, and that he has seen

physicians concerning his wrist pain, see Vondrak Affidavit at 3.  Vondrak saw Dr. Jain, a

neurologist, on May 15, 2005 and August 12, 2005.  See Plaintiff's Reply Memorandum of Law,

Exhibit E, Report of Dr. Pawan Jain at 2 (dated September 22, 2005)("Jain Report").  Vondrak

complained to Dr. Jain of numbness, tingling, and weakness in both hands.  See id.  Dr. Jain

determined that Vondrak had a permanent radial nerve injury.  See id. at 3.  Further, Dr. Jain

concluded: "[Vondrak's] handcuffing was the competent producing cause of his right radial and

bilateral median nerve injuries.  [Vondrak] ha[d] no prior history of any kind of injury to his hand

or wrist that could have caused or contributed to the nerve injuries I detected in my neurological

examination."  Id. at 2.

Vondrak also saw Dr. Lindsey, an orthopedist.  See Plaintiff's Reply Memorandum of Law,

Exhibit F, Report of Dr. Wayne Lindsey at 1(dated December 14, 2005)("Lindsey Report").  Dr.

Lindsey diagnosed Vondrak with "superficial radial nerve palsy" in his right hand and "bilateral

mild carpal tunnel syndrome."  Id. at 2.  Dr. Lindsey stated that he believed Vondrak had reached

maximum medical improvement.  See id.  Dr. Lindsey further stated that his "diagnoses seem to be

the direct result of constriction of the superficial radial nerve and the median nerve of the wrists

secondary to prolonged constriction by handcuffs placed . . . on 08/18/03-08/19/03."  Id.

The DUI charge against Vondrak was eventually dropped.  See Summary Judgment Memo

at 5.

## PROCEDURAL BACKGROUND

Vondrak filed suit against McCants, Krause, and the City of Las Cruces on February 16, 2005.  See Complaint at 1, filed February 16, 2005 (Doc. 1).  In his February 16, 2005 Complaint, Vondrak claims, pursuant to 42 U.S.C. § 1983, that  McCants and Krause violated his Fourth Amendment rights by unlawfully arresting him and using excessive force to do so, and by refusing to provide him with medical attention once he began to complain of injury to his wrists.  See Complaint at 2-6; Transcript at 71:14-23 (Byrnes)(taken August 8, 2006)("Transcript"); id. at 73:2-21 (Byrnes).[5]  In his Complaint, Vondrak also seeks to hold the City of Las Cruces liable under § 1983, because, he alleges, its failure to train its officers adequately led to the actions by McCants and Krause of which he complains.  See Complaint at 2-6.  Additionally, based on the same conduct cited to support his § 1983 claims, Vondrak raises state-law claims of intentional tort and negligence against McCants, Krause, and the City of Las Cruces.  See id. at 7-8.

On April 4, 2006, McCants, Krause, and the City of Las Cruces submitted their summary judgment motion.  See Doc. 52.  McCants and Krause move the Court to grant summary judgment in their favor on Vondrak's § 1983 claims.  See Summary Judgment Motion at 1.  The City of Las Cruces also moves the Court to grant it summary judgment, if the Court finds that McCants and Krause are entitled to summary judgment, because claims for municipal liability under § 1983 require showings that municipal agents exceeded constitutional limits.  See id. at 2, 18-19.  Further, if the Court grants the Defendants' summary judgment requests, they ask that the Court dismiss the remaining state-law claims for lack of jurisdiction.  See id. at 20.

---

[5] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

## STANDARDS FOR DETERMINING MOTIONS FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The opposing party may not rest upon mere allegations and denials in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(citing Fed. R. Civ. P. 56(e)).  An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party.  Id. at 249-50 (citations omitted).  Mere assertions or conjecture as to factual disputes are not enough to survive summary judgment.  See Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir. 1988).  The court may consider only admissible evidence when ruling on a motion for summary judgment.  See World of Sleep, Inc. v. La-Z-Boy Chair, Co., 756 F.2d 1467, 1474 (10th Cir. 1985)(citing Fed. R. Civ. P. 56(e)).

If a defendant seeks summary judgment, it has an "initial burden to show that there is an absence of evidence to support the nonmoving party's case." Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1164 (10th Cir. 2000)(quoting Thomas v. IBM, 48 F.3d 478, 484 (10th Cir. 1995))(internal quotations omitted).  Upon meeting that burden, the plaintiff must "identify specific facts that show the existence of a genuine issue of material fact." Id. (citations and internal quotations omitted).  "The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." Id. (citations and internal quotations omitted).  The non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing

that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. at 324 (internal quotations omitted).

## LAW REGARDING QUALIFIED IMMUNITY

Qualified immunity recognizes the legitimate "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982)(quoting Butz v. Economou, 438 U.S. 478, 506 (1978)). Qualified immunity therefore "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff, who must establish: (i) that the defendant violated a constitutional right; and (ii) that the constitutional right violated was clearly established. See Cortez v. McCauley, 478 F.3d 1108, 1114 (10th Cir. 2007). "If the plaintiff fails to carry either part of [the] two part burden, the defendant is entitled to qualified immunity." Albright v. Rodriguez, 51 F.3d 1531, 1535 (10th Cir. 1995). The second part of plaintiff's burden "must be undertaken in light of the specific context of the case, not as a broad proposition . . . ." Saucier v. Katz, 533 U.S. 194, 201 (2001). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation." Id. at 202. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992).

In making this determination, the court will view the evidence in the light most favorable

to the non-moving party; however, the record must demonstrate that the plaintiff has satisfied his heavy two-part burden.  See Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).  "Summary judgment based on qualified immunity is appropriate if the law did not put the officer on notice that his conduct would be clearly unlawful."  Cortez v. McCauley, 478 F.3d at 1114.  If the plaintiff establishes both a violation of a constitutional right and that the right was clearly established at the time of the alleged conduct, the burden shifts to the defendant, who must demonstrate that there are no genuine issues of material fact and that the defendant is entitled to judgment as a matter of law. See Cortez v. McCauley, 438 F.3d 980, 988 (10th Cir. 2006), vacated on other grounds by 478 F.3d 1108.  If there is a factual dispute involving an issue on which the qualified immunity turns, summary judgment based on a qualified immunity defense in a § 1983 action is not appropriate.  See Poe v. Haydon, 853 F.2d 418, 426 (6th Cir. 1988).

In determining whether a defendant is entitled to qualified immunity, a court cannot assume that a constitutional violation exists; rather, a court must consider the constitutional violation issue before taking up the clearly established issue:

> Taken in the light most favorable to the party asserting the injury, do the facts alleged show the government official's conduct violated a constitutional right?  This must be the initial inquiry. In the course of determining whether a constitutional right was violated on the premises alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a right is clearly established. This is the process for the law's elaboration from case to case, and it is one reason for our insisting upon turning to the existence or nonexistence of a constitutional right as the first inquiry. The law might be deprived of this explanation were a court simply to skip ahead to the question whether the law clearly established that the government official's conduct was unlawful in the circumstances of the case.

Kirkland v. St. Vrain Valley Sch. Dist. No. RE-1J, 464 F.3d 1182, 1188-89 (10th Cir. 2006).

## LAW REGARDING THE FOURTH AMENDMENT

Vondrak's Complaint raises a number of constitutional claims.  Vondrak alleges a series of Fourth Amendment violations.  Those claims, in turn, implicate a number of different areas of the law.

### 1.     Fixed Vehicle Checkpoints.

The stopping of a vehicle at a fixed checkpoint constitutes a seizure to which the Fourth Amendment's reasonableness requirement applies.  See United States v. Galindo-Gonzales, 142 F.3d 1217, 1221 (10th Cir. 1998).  A brief seizure at a checkpoint, even in the absence of individualized suspicion, may be reasonable if conducted in a neutral manner for the purpose of effectuating an important government interest.  See Mich. Dep't of State Police v. Sitz, 496 U.S. 444, 450-55  (1990)(ruling that a twenty-five second detention at a checkpoint for the purpose of determining drivers' sobriety was reasonable under the Fourth Amendment).  The Supreme Court of the United States, in concluding that fixed checkpoint stops do not violate the Fourth Amendment, has focused on the lack of discretion afforded the individual officers, the standardized procedures employed, and the minimal intrusion imposed on motorists.  See id. at 453.

In City of Las Cruces v. Betancourt, 105 N.M. 655, 735 P.2d 1161 (1987), the New Mexico Supreme Court articulated eight guidelines for determining whether vehicle checkpoints satisfy the Fourth Amendment's reasonableness standard.  First, supervisory officers, not officers in the field, must decide to set up a checkpoint, select the site, and establish procedures for conducting it.  See 105 N.M. at 658, 735 P.2d at 1164.  Second, the discretion of officers should be restricted -- vehicles should not be stopped randomly; every vehicle should be stopped or a mathematical selection formula should be used.  See 105 N.M. 658-59, P.2d at 1164-65.  Third, safety measures aimed at warning approaching traffic should be employed.  See 105 N.M. 659, P.2d at 1165.  Fourth, the

checkpoint should be established in a reasonable location, one taking account of intrusiveness and safety of the public.  See id.  Fifth, the time and duration of a checkpoint should be reasonable.  See id.  Sixth, the public nature of the checkpoint should be immediately apparent to approaching vehicles -- officers in the field should be uniformed and police cars should be marked.  See id.  Seventh, the average length of time that a motorist is detained at the checkpoint and the degree of intrusiveness should be minimized;  motorists should be detained only long enough to effectuate the purpose of the stop.  See id.  Finally, the reasonableness of checkpoints will be enhanced if they are widely publicized.  See id.

An officer may prolong a traffic stop if the officer has reasonable suspicion -- "an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring."  United States v. Hunnicutt, 135 F.3d 1345, 1349 (10th Cir. 1998).

## 2. <u>Reasonable Suspicion.</u>

The Supreme Court's decision in Terry v. Ohio, 392 U.S. 1 (1968), provides a two-prong test for determining the reasonableness of investigative detentions.  See United States v. Galindo-Gonzales, 142 F.3d at 1221 (evaluating the reasonableness of the detention of a motorist after the initial stop has been satisfied under Terry v. Ohio).  First, it must be decided whether the detention was "justified at its inception."  Terry v. Ohio, 392 U.S. at 20.  An officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion."  Id. at 21.  Those facts must tend to show that the detainee has committed or is about to commit a crime.  See United States v. Johnson, 364 F.3d 1185, 1189 (10th Cir. 2004).  Second, the detaining officer's actions must be "reasonably related in scope to the circumstances which justified the interference in the first place."  Terry v. Ohio, 392 U.S. at 20.  At both stages, the reasonableness of the officer's suspicions is judged by an objective standard taking

into account the totality of the circumstances and information available to the officer, including the area where the detention took place and the officer's own experience.  Depending on the totality of the circumstances, ambiguous behavior, susceptible to an innocent interpretation, may give rise to a reasonable suspicion of criminal activity.  See Oliver v. Woods, 209 F.3d 1179, 1188 (10th Cir. 2000).  "[A]s long as an officer has a particularized and objective basis for suspecting an individual may be involved in criminal activity, he may initiate an investigatory detention even if it is more likely than not that the individual is not involved in any illegality."  United States v. Johnson, 364 F.3d at 1194.

When an investigative detention is the subject of a § 1983 action, the defendant officer is entitled to immunity if a reasonable officer could have believed that reasonable suspicion existed to detain the plaintiff; officers need only have had "arguable reasonable suspicion," not actual reasonable suspicion to qualify for immunity.  Cortez v. McCauley, 478 F.3d at 1120 & n.15, 1123; Cortez v. McCauley, 438 F.3d at 990-92.  The standard for arguable reasonable suspicion is "whether a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that [reasonable suspicion] existed in the light of well established law."  Gold v. City of Miami, 121 F.3d 1442, 1145 (11th Cir. 1997).

### 3.    Field-Sobriety Tests.

The Tenth Circuit requires officers to have reasonable suspicion to conduct field-sobriety tests.  See Carlsen v. Duron, No. 99-4065, 2000 WL 1205822, at *3 (10th Cir. August 24, 2000).[6]

---

[6] Effective December 1, 2006, rule 32.1 of the Federal Rules of Appellate Procedure prohibits a court from restricting the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been designated "unpublished," "not for publication," "non-precedential," "not precedent," or the like, and that were issued on or after January 1, 2007.  Fed. R. App. P. 32.1.  For Tenth Circuit rulings issued before January 1, 2007, the Tenth Circuit Rule 36.3(B), which has been deleted from the latest version of the Tenth Circuit Rules,  applies.  Rule

In announcing that rule, the Tenth Circuit cited to the United States Court of Appeals for the District of Columbia's decision in Rogala v. District of Columbia, 161 F.3d 44 (D.C. Cir. 1998). See Carlsen v. Duron, 2000 WL 1205822, at *3. The Rogala Court had stated that:

> Because of the significant public interest in preventing a motorist whom an officer reasonably believes may be intoxicated from continuing to drive, and because further detention for a field sobriety test is a minimal intrusion on an already legally stopped individual's privacy, . . . many state courts have held that an officer may detain a motorist for such testing so long as there is reasonable suspicion that the driver may be intoxicated.
>
> No court in the District of Columbia has yet considered the degree of suspicion required to conduct a field sobriety test, but this Court is persuaded by the reasoning of the courts in those states that have concluded that a field sobriety test is such a minimal intrusion on the driver of the car that only reasonable suspicion is required to conduct such a test.

161 F.3d at 52 (internal citations omitted). See United States v. Wilson, 96 Fed. Appx. 640, 644 (10th Cir. 2004)(citing Rogala v. Dist. of Columbia for the proposition that only reasonable suspicion is required to conduct a field-sobriety test); United States v. Doss, (slip copy) 2006 WL 1409132, at *4 (D. Utah May 18, 2006)(holding that the court must determine whether an officer possessed a reasonable suspicion that the defendant was impaired at the moment that the officer asked the defendant to exit the vehicle for a field-sobriety test).

Whether reasonable suspicion to conduct a sobriety test exists "does not depend upon any one factor, but on the totality of the circumstances." United States v. Soto, 988 F.2d 1548, 1555 (10th Cir. 1993). See, e.g., United States v. Wilson, 96 Fed. Appx. at 644, 646 (acknowledging that officer had reasonable suspicion for a sobriety test where  the officer could smell alcohol on the

---

36.3(B) stated: "Citation to an unpublished decision is disfavored.  But an unpublished decision may be cited to if: (i) it has persuasive value with respect to a material issue that has not been addressed in a published opinion; and (ii) it would assist the court in its disposition."  Given this decision's date of issuance, the Tenth Circuit rule 36.3(B) controls.  This unpublished opinion meets both of rule 36.3(B)'s criteria, and the rules therefore allow citation to this unpublished decision.

driver and the driver admitted he had been drinking); Carlsen v. Duron, 2000 WL 1205822, at *3 (holding that the driver's angry response to officer, the driver's earlier wide right-hand turn, and the driver's slow driving and breaking provided the officer with reasonable suspicion for a field-sobriety test); United States v. Neumann, 183 F.3d 753, 754-56 (8th Cir. 1999)(determining that an officer had reasonable suspicion for a portable breath test where the driver was pulled over for going five miles over the speed limit, because the driver was smoking, appeared nervous, and smelled of alcohol); Rogala v. Dist. of Columbia, 161 F.3d at 52 (ruling that an officer who witnessed a driver run a red light and who observed that the driver's eyes were glossy, and that the driver's face was bloated, had reasonable suspicion for a field-sobriety test); Blackstone v. Quirino, 309 F. Supp. 2d 117, 120, 126 (D. Maine 2004)(stating that officers had reasonable suspicion for a field-sobriety test where they observed the driver's vehicle swerving within its lane and they believed that they smelled an alcoholic beverage in the vehicle); United States v. Oliver, 126 F. Supp. 2d 495, 501 (S.D. Ohio 2000)("[W]hen a police officer makes a traffic stop of an erratic . . . driver, smells alcohol . . . on him or the interior of the vehicle and the driver provides the officer with evasive or suspicious responses to his inquiries, the fact that the officer on the scene performs a field-sobriety test of the driver . . . does not offend the Constitution in any way."); Griffin v. City of Clanton, 932 F. Supp. 1359, 1363, 1366 (M.D. Ala. 1996)(concluding that an officer who pulled a car over for speeding had reasonable suspicion for a field-sobriety test where officer smelled alcohol and driver admitted to having consumed a few drinks). But cf. Amundsen v. Jones, (slip copy) 2006 WL 2819997, at *5-7 (D. Utah September 29, 2006)(ruling that officers did not have reasonable suspicion for a field-sobriety test where driver had been pulled over for changing lanes without a turn signal, her pupils appeared constricted, and she seemed to have difficulty maintaining balance as she exited her vehicle, but the officers did not observe any containers of alcohol, the driver was

non-confrontational, the driver's speech was not slurred, her breath did not smell of alcohol, her face was not bloated, and her eyes were neither glassy nor bloodshot).

**4.     Probable Cause and Arrest.**

"A police officer violates an arrestee's clearly established Fourth Amendment right to be free of unreasonable seizure if the officer makes a warrantless arrest without probable cause." Olsen v. Layton Hills Mall, 312 F.3d 1304, 1312 (10th Cir. 2002)(citing Tennessee v. Garner, 471 U.S. 1, 7 (1985)).  A police officer may effectuate a warrantless arrest so long as there is probable cause for the arrest.  See Michigan v. DeFillippo, 443 U.S. 31, 36 (1979).  "'[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Id. at 37.

"When a warrantless arrest is the subject of a [§] 1983 action, the defendant arresting officer is entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest the plaintiff." Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995)(citations and internal quotations omitted).  As with reasonable suspicion, officers are entitled to qualified immunity with respect to probable cause if they had "arguable probable cause;" they are not required to have had actual probable cause.  See Cortez v. McCauley, 478 F.3d at 1120 & n.15.  "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." Id. (citation and internal quotations omitted).  "Probable cause need only exist as to any offense that could be charged under the circumstances." Smith v. Wampler, 108 Fed. Appx. 560, 567 (10th Cir. 2004)(citations and internal quotations omitted).  The Tenth Circuit recently stated:

> [A] police officer's subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.  An arrest is not invalid under the Fourth Amendment simply because the police officer subjectively intended

-17-

> to base the arrest on an offense for which probable cause is lacking, so long as the circumstances, viewed objectively, justify the arrest.  Subjective intent of the arresting officer, however it is determined (and of course subjective intent is always determined by objective means), is simply no basis for invalidating an arrest.  Those are lawfully arrested whom the facts known to the arresting officers give probable cause to arrest . . . .

Apodaca v. City of Albuquerque, No. 05-2008, 2006 U.S. App. LEXIS 8811, at **7-8 (10th Cir. April 11, 2006).

### 5.     **Excessive Use of Force**.

Courts analyze claims that law enforcement officers used excessive force in the course of an investigative detention, arrest, or other seizure under the Fourth Amendment reasonableness standard.  See Graham v. Connor, 490 U.S. 386, 396 (1989); Cortez v. McCauley, 478 F.3d at 1125. In Graham v. Connor, the Supreme Court stated:

> Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. . . .  Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

490 U.S. at 396 (internal citations and quotations omitted).  The Graham Court also stated:

> The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . .  With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation.
>
>     As in other Fourth Amendment contexts, however, the reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers'

actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

Id. at 396-97(internal citations and quotations omitted).

The Tenth Circuit requires that a plaintiff demonstrate "some actual injury that is not de minimis, be it physical or emotional," to establish excessive use of force.  Cortez v. McCauley, 478 F.3d at 1129.  In Cortez v. McCauley, the Tenth Circuit considered whether officers used excessive force in applying handcuffs too tightly.  The Cortez court held:

In some circumstances, unduly tight handcuffing can constitute excessive force where a plaintiff alleges some actual injury from the handcuffing and alleges that an officer ignored a plaintiff's timely complaints (or has otherwise made aware) that the handcuffs were too tight. . . .  Although [the plaintiff] complained to the officer that the handcuffs were too tight, the summary judgment record presents too little evidence of any actual injury.  We believe that a claim of excessive force requires some actual injury that is not de minimis, be it physical or emotional.  The only evidence in the record is [the plaintiff's] affidavit that the handcuffs left red marks that were visible for days afterward. . . .  This is insufficient, as a matter of law, to support an excessive force claim if the use of handcuffs is otherwise justified.

Cortez v. McCauley, 478 F.3d at 1129 (citing Hannula v. Lakewood, 907 F.2d at 132 (holding that, in a case where there was "no evidence of contusions, lacerations or damage to the bones or nerves of [the plaintiff's] wrists," evidence indicating handcuffs caused pain was insufficient to show excessive use of force ).

## LAW REGARDING THE DUE PROCESS CLAUSE
## OF THE FOURTEENTH AMENDMENT

Pretrial detainees' claims of inadequate medical attention are based on the Fourteenth Amendment's due process clause, and not on the Eight Amendment's prohibition against cruel and unusual punishment.  See Barrie v. Grand County, 119 F.3d 862, 867 (10th Cir. 1997).  The analysis, however, is the same:

-19-

> Under the Fourteenth Amendment's due process clause, pretrial detainees . . . are
> entitled to the same degree of protection regarding medical attention as that afforded
> convicted inmates under the Eighth Amendment. Thus, [a pretrial detainee's]
> inadequate medical attention claim must be judged against the "deliberate
> indifference to serious medical needs" test of Estelle v. Gamble, 429 U.S. 97 (1976).

Frohmader v. Wayne, 958 F.2d 1024, 1028 (10th Cir. 1992). The deliberate indifference standard

applies to arresting officers and jailers. See Martin v. Bd. of County Comm'rs of the County of

Pueblo, 909 F.2d 402, 406 (10th Cir. 1990)(stating that the standard governing pretrial detainees also

applies to arrestees); Prado v. Lane, 98 Fed. Appx. 757, 760 (10th Cir. 2004). The deliberate

indifference test is a difficult standard to meet; it "requires a higher degree of fault than negligence,

or even gross negligence." Barrie v. Grand County, 119 F.3d at 869. Specifically, the Tenth Circuit

has stated: "[A]n official or municipality acts with deliberate indifference if its conduct disregards

a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional

rights." Barrie v. Grand County, 119 F.3d at 869. To make this showing, a plaintiff must present

evidence of an official's culpable state of mind, and that requires a showing that the official knew

of and disregarded an excessive risk to the plaintiff's health or safety. See Randall v. Bd. of County

Comm'rs, 184 Fed. Appx 723, 726 (10th Cir. 2006). In Quint v. Cox, 348 F. Supp. 2d 1243 (D.

Kan. 2004), the United States District Court for the District of Kansas summarized the state of the

law on deliberate indifference as follows:

> Deliberate indifference involves both an objective and a subjective component.
> Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000). The objective
> component is satisfied if the deprivation is sufficiently serious. Farmer v. Brennan,
> 511 U.S. 825, 834 (1994); Sealock at 218 F.3d at 1209. A medical need is
> sufficiently serious if it has been diagnosed by a doctor, or if it would be obvious to
> a layperson that doctor intervention was needed. Thompson v. Gibson, 289 F.3d
> 1218, 1222 (10th Cir. 2002). The subjective component is satisfied if the official
> knows of and disregards an excessive risk to [arrestee] health or safety. Farmer, 511
> U.S. at 837; Sealock, 218 F.3d at 1209. That is, the official must be aware of facts
> from which the inference could be drawn that a substantial risk of harm exists, and
> he must also draw the inference. Farmer, 511 U.S. at 837.

-20-

348 F. Supp. 2d at 1248.

## LAW REGARDING DUTY TO INTERVENE

An officer who fails to intervene to prevent another officer from depriving a person of his or her civil rights may be liable under § 1983.  See Lusby v. T.G.&Y. Stores, Inc., 749 F.2d 1423, 1433 (10th Cir. 1984).  In Hall v. Burke, 12 Fed. Appx. 856 (10th Cir. 2001), the Tenth Circuit made clear that an officer's duty to intervene applies to instances concerning excessive use of force and illegal arrest.  The Hall court stated:

> [W]e agree . . . that it is clearly established that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.  An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official.  In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring.  Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.

12 Fed. Appx. at 861 (quoting Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1996)).  See Lepone-Dempsey v. Carroll County Comm'rs, 159 Fed. Appx. 916, 920 (11th Cir. 2005)(ruling that it is clearly established that an officer may be held liable for failing to intervene to stop an unlawful arrest); Mick v. Brewer, 76 F.3d 1127, 1136 (10th Cir. 1996)("[A] law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983."); Yang v. Hardin, 37 F.3d 282, 285 (7th Cir. 1994)(holding that officers have a duty to intervene where a citizen has been unjustifiably arrested); O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir.1988)("A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers."); Lusby v.

T.G. & Y. Stores, Inc., 749 F.2d at 1433 (ruling that officer who did not prevent fellow officer's use of allegedly excessive force against an arrestee 'may be liable [under § 1983] if he had the opportunity to intervene but failed to do so"); Dawkins v. Williams, 413 F. Supp. 2d 161, 172 (N.D.N.Y. 2006)(stating, with respect to illegal arrest, that: "[i]t is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence"); Kaylor v. Rankin, 356 F. Supp. 2d 839, 850-51 (N.D. Ohio 2005)(finding that the defendant officer should have intervened to stop an unlawful arrest from happening, because he had sufficient time to intervene and would have been able to avoid the unlawful arrest of the plaintiff).

## LAW REGARDING MUNICIPAL LIABILITY UNDER § 1983

A municipality will not be held liable under § 1983 solely because its officers inflicted injury.  See Graves v. Thomas, 450 F.3d 1215, 1218 (10th Cir. 2006).  Rather, to establish municipal liability under § 1983, a plaintiff must demonstrate: (i) that an officer committed an underlying constitutional violation; (ii) that a municipal policy or custom exists; and (iii) that there is a direct causal link between the policy or custom and the injury alleged.  See id.  When a claim is brought against a municipality for failing to train its officers adequately, the plaintiff must show that the municipality's inaction was the result of deliberate indifference to the rights of its inhabitants.  See id.

## ANALYSIS

The Court finds that McCants is not entitled to summary judgment on Vondrak's illegal arrest claim.  With respect to Krause, the Court finds that he is entitled to summary judgment on Vondrak's illegal arrest claim.  The Court also finds that McCants and Krause are not entitled to summary judgment with respect to Vondrak's excessive use of force claims, but that they are

entitled to summary judgment on Vondrak's inadequate medical attention claims.  Concerning the City of Las Cruces, because the Court finds that McCants and Krause did not violate Vondrak's constitutional rights by providing inadequate medical attention, the Court will grant the City summary judgment on that related claim.

As an initial matter, the Court finds that, because the initial stop at the checkpoint was legal and because the failure of three field-sobriety tests would give an arresting officer probable cause to arrest an individual for DUI, whether Vondrak's arrest was illegal hinges on whether McCants possessed reasonable suspicion to administer field-sobriety tests to Vondrak.  The Court believes that the checkpoint was legal: (i) the Chief of the Las Cruces Police Department specifically approved the checkpoint, see Summary Judgment Memo, Exhibit F2, City of Las Cruces Interdepartmental Memorandum to Chief Bill Baker from Sergeant Todd Gregory at 1 (approved August 14, 2003)("Baker Memo"); (ii) the checkpoint was established as part of a publicized "Superblitz" program to help eliminate drunk driving, see Summary Judgment Memo, Exhibit F1, News Release at 1 (dated August 13, 2003); (iii) the checkpoint's timing and duration were reasonable, it ran from 10:00 p.m. to 1:00 a.m., see Baker Memo at 1; (iv) the checkpoint was cordoned off with traffic cones and control flares, see Vondrak Depo at 18:16-25; and (v) there is no claim or indication that the officers manning the checkpoint were operating with too much discretion.  See Mich. Dep't of State Police v. Sitz, 496 U.S. at 453 (ruling that the focus of checkpoint analysis should be on the amount of discretion afforded to individual officers, whether standardized procedures were employed, and whether the intrusion imposed on motorists was minimal); City of Las Cruces v. Betancourt, 105 N.M. at 658-59, 735 P.2d at 1164-65 (listing guidelines for determining whether vehicle checkpoints satisfy the Fourth Amendment's reasonableness standard).  The Court does not find, as Vondrak contends, that the checkpoint

-23-

violated the Constitution because there was no breath testing device on scene.  See Plaintiff's Reply Memorandum of Law at 12, filed April 4, 2006 (Doc. 60); id., Exhibit J, Report of Expert Witness William Gaut at 4 (dated January 9, 2006).  Vondrak does not provide any case law, nor has the Court identified any, finding a checkpoint illegal for failing to maintain a breath testing device on site.

The Court also believes that a motorist's failure of three field-sobriety tests would give an arresting officer probable cause to arrest the motorist for DUI.  A police officer may make a warrantless arrest so long as probable cause exists for the arrest.  See Michigan v. DeFillippo, 443 U.S. at 36.  Probable cause exists if the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a person of reasonable caution in believing, in the circumstances shown, that the arrestee has committed or is committing a crime.  See id. at 37.  In determining whether probable cause was present, the totality of the circumstances are considered.  See Carlsen v. Duron, 2000 WL 1205822, at *4.  Considering that Vondrak admitted to having drank alcohol earlier in the evening and that he failed three field-sobriety tests, the Court finds that McCants, given the totality of the circumstances, had probable cause to arrest Vondrak for DUI.  See id. (holding that motorist's improper lane change, anger, and failure of field-sobriety tests provided probable cause for arrest for DUI); Ross v. Myers, 883 F.2d 486, 489 (6th Cir. 1989)("Had [the officer] instructed [the plaintiff] to perform field sobriety tests prior to placing him under arrest and had [the plaintiff] failed the tests, she would have had reasonable grounds to believe that he was operating the vehicle while under the influence of alcohol, at which time she would have had probable cause to arrest [the plaintiff].");  Burgess v. West, 817 F.Supp 1520, 1528 (D. Kan. 1993)("After [the officer] smelled alcohol on [the plaintiff's] breath and [the plaintiff] failed the field sobriety test, [the officer] had probable cause to arrest [the plaintiff] for driving under the influence of alcohol.").

-24-

I.    **AN ISSUE OF MATERIAL FACT EXISTS REGARDING WHETHER McCANTS IS ENTITLED TO QUALIFIED IMMUNITY ON VONDRAK'S ILLEGAL ARREST CLAIM.**

With respect to Vondrak's illegal arrest claim, it is uncertain whether McCants qualifies for immunity.  First, accepting Vondrak's factual assertions as true, as the Court must, Vondrak presents sufficient evidence to show that McCants violated a constitutional right.   An officer violates a citizen's right to be free from unreasonable search and seizure if the officer prolongs a traffic stop or conducts a field-sobriety test without reasonable suspicion.  See United States v. Hunnicutt, 135 F.3d at 1349 (ruling that an officer may prolong a traffic stop if he has reasonable suspicion). Vondrak alleges that he was subjected to a field-sobriety test solely because he told an officer that he had consumed "one beer three hours ago."  Tape at 1:4-10.  The undisputed facts, as the parties present them, do not demonstrate that any other indicator -- such as a traffic violation, containers of alcohol, a confrontational demeanor, slurred speech, the smell of alcohol, a bloated face, or glassy or bloodshot eyes -- was present that would have, when combined with Vondrak's admission, provided McCants with "actual reasonable suspicion" to administer a field-sobriety test.  The Court believes that Vondrak's statement, by itself, was not enough to provide McCants, as a matter of law, with an objectively reasonable and articulable suspicion that Vondrak had driven or was driving under the influence of alcohol.  See United States v. Hunnicutt, 135 F.3d at 1349 (defining "reasonable suspicion").  Second, at the time Vondrak's traffic stop was prolonged and the sobriety test was administered, it was clearly established that an officer needed reasonable suspicion to do such.  See Terry v. Ohio, 392 U.S. at 20-21 (providing a two-part test for determining the reasonableness of an investigatory detention); United States v. Galindo-Gonzales, 142 F.3d at 1221 (evaluating the reasonableness of a motorist's detention after the initial stop has been satisfied under Terry v. Ohio); Carlsen v. Duron, 2000 WL 1205822 at *3 (requiring that officers have reasonable

-25-

suspicion to conduct field-sobriety tests).

The qualified immunity analysis, however, does not end there.  McCants is entitled to immunity if she had "arguable reasonable suspicion" -- if a reasonable officer in the same circumstances and possessing the same knowledge as McCants could have reasonably believed that reasonable suspicion existed in the light of well established law.  See Cortez v. McCauley, 478 F.3d at 1120 & n. 15, 1123; Cortez v. McCauley, 438 F.3d at 990-92 (defining "arguable reasonable suspicion"); Gold v. City of Miami, 121 F.3d at 1145 (same).  The Court believes that, given Vondrak's statement that he had consumed alcohol earlier in the evening, a factual question exists whether a reasonable officer in McCants' position could have believed that reasonable suspicion existed to conduct a field-sobriety test.  Because there is a factual issue on which qualified immunity turns, summary judgment based on qualified immunity is not appropriate and thus the Court will not grant McCants summary judgment on Vondrak's illegal arrest claim.  See Poe v. Haydon, 853 F.2d at 426 (stating that summary judgment on the basis of qualified immunity is inappropriate where there is a factual dispute involving an issue on which qualified immunity turns).

## II.   McCANTS IS NOT ENTITLED TO QUALIFIED IMMUNITY ON VONDRAK'S EXCESSIVE USE OF FORCE CLAIM.

Vondrak's failure to authenticate his medical records and reports presents claim determinative issues for the Court.  If the Court does not consider the records, Vondrak has not presented sufficient evidence to create an issue of fact regarding excessive force.  On the other hand, if the Court considers the records, the Court would deny the motion.  Because these records are claim determinative, the Court will grant the motion, conditional upon Vondrak's prompt submission of properly authenticated materials.

A.      THE NECESSITY OF AUTHENTICATION.

"It is well established . . . that a party cannot rely on unauthenticated documents to avoid summary judgment." <u>IBP, Inc. v. Mercantile Bank of Topeka</u>, 6 F. Supp. 2d 1258, 1263 (D. Kan. 1998)(citing 10A Charles A. Wright et al., Federal Practice and Procedure § 2722 at 383-84 (3d ed. 1998). Summary judgment evidence must meet the threshold requirements of admissibility. <u>See</u> <u>Murray v. City of Sapulpa</u>, 45 F.3d 1417, 1422 (10th Cir. 1995). Rule 56(e) of the Federal Rules of Civil Procedure requires copies of all papers or parts attached to a motion or response to be sworn or certified copies. <u>See</u> Fed. R. Civ. P. 56(e).

Vondrak submitted his medical records from Mountain View Regional Medical Center and reports from Drs. Jain and Lindsey without accompanying affidavits or certification. Generally, pursuant to rule 56(e), the Court would not consider such unauthenticated documents. In this instance, however, because the Court finds those materials to be case determinative with respect to Vondrak's excessive use of force claims, because Vondrak has timely requested leave to submit any required authentication, <u>see</u> Response to Defendants Motion to Strike and Objections to Plaintiff's Summary Judgment Exhibits and Cross Motion to Defer Formal Authentication of Medical Reports to Trial and For Waiver of Exhibit Page Limitations at 2, filed April 27, 2006 (Doc. 64), and because Vondrak should not have difficulty securing the necessary authentication, the Court will treat the factual record before it as including Vondrak's medical records and the reports of Drs. Jain and Lindsey. Below, are two analyses. The first treats the medical records and reports as inadmissible because they lack authentication. The second treats those materials as part of the factual record before the Court.

**B.    QUALIFIED IMMUNITY ANALYSIS WHEN THE MEDICAL RECORDS AND REPORTS ARE NOT CONSIDERED PART OF THE RECORD.**

If the Court ignores the unauthenticated medical records and reports, McCants is entitled to qualified immunity with regard to Vondrak's excessive use-of-force claim, because Vondrak fails to establish that his right to be free from excessive force was violated -- he does not demonstrate an actual, legally cognizable injury.  Without the unauthenticated medical records, Vondrak does not present any specific factual evidence that McCants' handcuffing of him caused him anything more than pain and left visible red marks.  In Cortez v. McCauley, the Tenth Circuit held that evidence that handcuffs left red marks that were visible for days afterward was insufficient, as a matter of law, to allege excessive force.  See 478 F.3d at 1129.  The Tenth Circuit, in Hannula v. Lakewood, upheld a grant of qualified immunity to officers accused of fastening handcuffs too tightly when there was "no evidence of contusions, lacerations or damage to the bones or nerves of the . . . wrists . . . [and] [t]he evidence establishe[d] nothing more than that the handcuffing caused . . . pain."  907 F.2d at 132.  As such, the Court finds that, without the unauthenticated medical records and reports, McCants would be entitled to qualified immunity on Vondrak's excessive use of force claim and would thus grant summary judgment to McCants on that claim.

**C.    QUALIFIED IMMUNITY ANALYSIS WHEN THE MEDICAL RECORDS AND REPORTS ARE CONSIDERED PART OF THE RECORD.**

When the Court considers the unauthenticated medical records and reports, McCants does not qualify for immunity on Vondrak's excessive use-of-force claim.  First, Vondrak presents facts demonstrating that McCants violated his constitutional right to be free of excessive force by handcuffing him too tightly, in a manner sufficient to cause permanent nerve damage.  The Tenth Circuit requires that a plaintiff show some actual, non-deminimis injury to recover for excessive force.  See Cortez v. McCauley, 478 F.3d at 1129.  Vondrak submits that he has suffered permanent

nerve damage as a result of McCants' use of excessive force in handcuffing him.  See Jain Report at 2-3; Lindsey Report at 2.  The Court believes that permanent nerve damage satisfies the actual injury requirement, see Hannula v. Lakewood, 907 F.2d at 132 (finding no legally cognizable injury where the plaintiff presented "no evidence of contusions, lacerations or damage to the bones or nerves of the . . . wrists"), and that, therefore, Vondrak, with his medical records and reports, presents sufficient evidence of a violation of a constitutional right.  Second, at the time of the handcuffing, the right to be free from the use of excessive force under objective standards of reasonableness was clearly established.  See Graham v. Connor, 490 U.S. at 396-97; Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1195-96 (10th Cir. 2001).

Because the Court finds that, when it considers the medical records, Vondrak has established that his constitutional right to be free from excessive force was violated -- he was handcuffed in a manner that caused an actual, non-deminimis injury -- and that the right to be free from excessive force under objective  reasonableness standards was clearly established at the time of the alleged incident, the Court concludes that McCants is not entitled to qualified immunity on Vondrak's excessive use of force claim.  See Cortez v. McCauley, 478 F.3d at 1114 (providing the two-part standard plaintiffs must meet to overcome a qualified immunity defense).  Accordingly, if it considers the medical records, the Court will not grant summary judgment to McCants on the excessive use of force issue.

**D.    IN THE EVENT VONDRAK DOES NOT FILE ADEQUATELY AUTHENTICATED MEDICAL RECORDS AND REPORTS, THE COURT WILL GRANT THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE BASIS OF QUALIFIED IMMUNITY.**

The Court is reluctant to dismiss claims over an authentication issue, particularly where the nonmovant asks for permission to submit authenticated documents and the materials are claim

determinative.  At the present time, the Court will treat Vondrak's medical records, and the reports of Drs. Jain and Lindsey, as authenticated for the purposes of this Memorandum Opinion and Order. Doing so, the Court finds that McCants is not entitled to summary judgment on Vondrak's excessive use of force claim.  The Court will, however, deny McCants' request for summary judgment on the excessive force claim without prejudice.  If Vondrak does not provide the Court with adequate authentication of the medical records and the reports within ten days of the issuance of this opinion and order, the Defendants' motion for summary judgment on that claim will be granted.

## III.   McCANTS IS ENTITLED TO QUALIFIED IMMUNITY ON VONDRAK'S INADEQUATE MEDICAL ATTENTION CLAIM.

Because Vondrak does not establish that his right to adequate medical attention was violated, McCants is entitled to immunity with respect to Vondrak's inadequate medical attention claim. Vondrak fails to present facts that demonstrate McCants was deliberately indifferent to his serious medical needs.  See Frohmader v. Wayne, 958 F.2d at 1028 (stating that a pretrial detainee's inadequate medical attention claim must be judged against the deliberate indifference to serious medical needs test).  To establish inadequate medical attention, Vondrak needs to show that McCants knew of and disregarded an excessive risk to his health, see Randall v. Bd. of County Comm'rs, 184 Fed. Appx. at 726 (requiring that the plaintiff make a showing of the officer's culpable state of mind), and that his medical need was sufficiently serious such that a doctor had diagnosed it or a layperson would have found it obvious that doctor intervention was needed, see Quint v. Cox, 348 F. Supp. 2d at 1248 ("A medical need is sufficiently serious if it has been diagnosed by a doctor, or if it would be obvious to a layperson that doctor intervention was needed.")(citing Thompson v. Gibson, 289 F.3d at 1222).  While Vondrak told McCants several times that the handcuffs were too tight and that his wrists hurt, see Vondrak Depo at 27:5-14, 30:3-

-30-

10, 28:5-10, Vondrak Affidavit at 3, the Court does not believe, given that McCants alleges that she did not see anything that would have led her to believe that the handcuffs were injuring or would injure Vondrak and that Vondrak does not present evidence to contest that observation, that McCants knew or should have known that medical attention was required.  Moreover, Vondrak does not present any evidence that, if McCants knew of the need for medical attention, she deliberately disregarded such.  The Court, therefore, finds that McCants is entitled to qualified immunity on Vondrak's inadequate medical attention claim and will thus grant summary judgment to McCants on that claim.

## IV.    KRAUSE IS ENTITLED TO SUMMARY JUDGMENT ON VONDRAK'S ILLEGAL ARREST AND INADEQUATE MEDICAL ATTENTION CLAIMS BUT IS NOT ENTITLED TO SUMMARY JUDGMENT ON VONDRAK'S EXCESSIVE USE OF FORCE CLAIM.

As Vondrak has not established that McCants violated his right to adequate medical attention, Krause cannot be held liable for failing to intervene with respect to that claim.  The Court will thus grant Krause summary judgment on Vondrak's inadequate medical attention claim.

With regard to Vondrak's illegal arrest claim, the Court will grant summary judgment to Krause.  Krause submits that he walked over to where McCants and Vondrak were, "because [McCants] had asked [him] to go over there while she did the tests," see Deposition of Nathan Krause at 35:16-17 (Krause)(taken August 19, 2005), that he observed McCants administer field-sobriety tests to Vondrak, see Krause Affidavit at 1, and  that he watched Vondrak "in case he got out of line," see id. at 37:6-8 (Krause).  Krause also alleges that, following McCants' arrest of Vondrak, he conducted a pat down of Vondrak and an inventory search of his vehicle.  See Krause Affidavit at 1.

Further, Krause alleges that he was not the arresting officer and that he did not place

-31-

Vondrak in handcuffs.  See id. at 1-2.  Vondrak does not contest Krause's assertions, nor does Vondrak contend that Krause was present to observe his encounter with McCants before she began to administer the field-sobriety tests -- i.e. before and/or during the time McCants determined that she had reasonable suspicion to administer the field-sobriety tests.  Indeed, Vondrak does not present any evidence relating to when Krause began observing or interacting with him and McCants.  The Court has not been presented with any evidence showing that Krause observed or had reason to know that McCants may have lacked reasonable suspicion to administer the field-sobriety tests.  To be held liable for failing to intervene to prevent an illegal arrest, an officer must have had a realistic opportunity to intervene to prevent the harm from occurring.  See Hall v. Burke, 12 Fed. Appx. at 861.  Because the undisputed facts demonstrate that Krause did not begin to observe the McCants/Vondrak encounter until after McCants had determined that she had reasonable suspicion to conduct field-sobriety tests, the Court believes that a reasonable jury could not possibly conclude that Krause had the capability to intercede to prevent the harm that Vondrak may have suffered as a result of McCants' actions.  As such, the Court finds that Krause is entitled to summary judgment on Vondrak's illegal arrest claim.

With respect to Vondrak's excessive use of force claim, the Court will deny summary judgment to Krause.  Accepting the facts in the light most favorable to Vondrak, as the Court must, Krause appears to have been present when McCants placed handcuffs on Vondrak.  Krause observed McCants administer the field-sobriety tests, see Krause Affidavit at 1, McCants handcuffed Vondrak after making it seem that her request that Vondrak turn around and place his hands behind his back was yet another test, see Tape at 6:16-20,  and Krause searched Vondrak's person after he was handcuffed, see Krause Affidavit at 1.  "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless,

considering all the evidence, a reasonable jury could not find otherwise." Hall v. Burke, 12 Fed. Appx. at 861.  Given Krause's close proximity to the handcuffing, the Court does not believe that it would be impossible for a reasonable jury to conclude that Krause could have effectively intervened.  The Court, therefore, will not grant Krause summary judgment on Vondrak's excessive use of force claim.

## V. THE CITY OF LAS CRUCES IS NOT ENTITLED TO SUMMARY JUDGMENT ON VONDRAK'S ILLEGAL ARREST AND EXCESSIVE USE OF FORCE CLAIMS, BUT IS ENTITLED TO SUMMARY JUDGMENT ON VONDRAK'S INADEQUATE MEDICAL ATTENTION CLAIM.

The City of Las Cruces moves the Court to grant it summary judgment where McCants and Krause are entitled to summary judgment.  See Summary Judgment Memo at 18-19.  Because a plaintiff seeking to hold a municipality liable under § 1983 must first establish that an officer committed an underlying constitutional violation, see Graves v. Thomas, 450 F.3d at 1218 ("[A] municipality may not be held liable where there was no underlying constitutional violation by its officers."), and because the Court has found that Vondrak failed to establish that his right to adequate medical attention was violated, the Court will grant summary judgment to the City on that related claim.  As the Court found that Vondrak introduced sufficient evidence to establish constitutional violations with respect to his illegal arrest and excessive use of force claims, as the Court found that Krause but not McCants was entitled to summary judgment on Vondrak's illegal arrest claims, as the Court did not find that McCants and Krause were entitled to summary judgment on Vondrak's excessive use of force claims, and as the City has not moved for summary judgment by attacking any of the other elements necessary to hold a municipality liable, the Court will not grant summary judgment to the City of Las Cruces on Vondrak's illegal arrest and excessive force claims.

-33-

Because the Court finds that McCants is entitled to summary judgment based on qualified immunity with regard to Vondrak's inadequate medical attention claim, the Court finds that Krause and the City are also entitled to summary judgment on that claim. Because the Court concludes that Krause did not have an adequate opportunity to intervene in McCants' allegedly illegal arrest of Vondrak, the Court finds that Krause is entitled to summary judgment on Vondrak's illegal arrest claim.  Because the Court finds that McCants and Krause are not entitled to summary judgment on Vondrak's excessive use of force claims, the Court finds that the City is not entitled to summary judgment on that claim.  Finally, because the Court concludes that a factual question prevents the application of qualified immunity with respect to Vondrak's illegal arrest claim against McCants, the Court concludes that McCants and the City are not entitled to summary judgment on that claim. The Court grants the Defendants' Motion for Summary Judgment in part and denies it in part.

**IT IS ORDERED** that summary judgment is granted to McCants, Krause, and the City of Las Cruces on Vondrak's inadequate medical attention claims, that summary judgment is granted to Krause on Vondrak's illegal arrest claim, that summary judgment is denied to McCants and the City of Las Cruces on Vondrak's illegal arrest claim, and that summary judgment is denied to McCants, Krause, and the City of Las Cruces on Vondrak's excessive use of force claims.  If Vondrak does not provide the Court with adequate authentication of the medical records and the reports within ten days of the issuance of this opinion and order, the Defendants' motion for summary judgment on the excessive use of force claims will be granted.

UNITED STATES DISTRICT JUDGE

-34-

*Counsel:*

Barry J. Byrnes
Las Cruces, New Mexico

      *Attorney for the Plaintiff*

Harry S. Connelly, Jr.
  Deputy City Attorney for the
    City of Las Cruces
Las Cruces, New Mexico

-- and --

William L. Lutz
David P. Lutz
Martin, Lutz, Roggow, Hosford & Eubanks, P.C.
Las Cruces, New Mexico

      *Attorneys for Defendants City of Las Cruces, Cindy McCants,*
      *and Nathan Krause*