## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JOHN VONDRAK,

       Plaintiff,

vs.                                    No. CIV-05-0172 JB/LFG

CITY OF LAS CRUCES, POLICE OFFICER,
CINDY MCCANTS and NATHAN KRAUSE
Individuals and employees of the Las Cruces Police
Department, and CITY OF LAS CRUCES,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion to Amend Complaint, filed March 3, 2009 (Doc. 140). The Court has reviewed the briefing and believes it has sufficient information to make an ruling without a hearing. The primary issue is whether the Court should permit Plaintiff John Vondrak to amend his Complaint to add a claim for illegal detention after breath tests returned blood alcohol content measurements of 0.00. See Brief in Support of Plaintiff's Motion to Amend Complaint at 3, filed March 18, 2009 (Doc. 154)("Brief"). Specifically, the Court must decide whether to allow the amendment so that Vokdrak can plead that he suffered a violation of his Fifth, Fourteenth, and Eighth Amendment rights for the two-hour detention to which the police subjected him after his arrest. Because the Court finds that the motion to amend is untimely, and that its addition would be futile, the Court will deny leave to amend.

## FACTUAL BACKGROUND

The facts leading up to this lawsuit are largely set forth elsewhere. See Vondrak v. City of Las Cruces, 535 F.3d 1198, 1200-03 (10th Cir. 2008); Memorandum Opinion and Order, filed May

14, 2007 (Doc. 80)("MOO").  As relevant to the issues in this motion, Vondrak alleges that, after

his arrest, he was tested four times on police-department breath-testing equipment and that his

blood-alcohol content (BAC) measured 0.00 on each test.  See Complaint ¶ 16, at 3-4.  According

to Vondrak, he remained handcuffed in a jail cell despite the Defendants' knowledge that he was

not under the influence of alcohol or drugs.  See Proposed First Amended Complaint ¶ 18, at 5, filed

March 3, 2009 (Doc. 142).  After being handcuffed in the jail cell for approximately two hours,

Vondrak was released.  See id.

## PROCEDURAL HISTORY

This case is the second oldest on the Court's docket.  Vondrak filed his original Complaint

on February 16, 2005.  See Complaint, filed February 16, 2005 (Doc. 1).  Shortly thereafter, the

Court issued an initial scheduling order stating: "Any motions to amend pleadings and/or to join

additional parties shall be filed and served five days prior to the Rule 16 scheduling conference."

Initial Scheduling Order at 1-2, entered March 30, 2005 (Doc. 11).  The Court held the initial

scheduling conference on April 22, 2005.  At the initial scheduling conference, the Court restricted

discovery to issues relevant to the Defendants' qualified immunity defense.  See Transcript of Initial

Scheduling Conference at 13:8-20 (taken April 22, 2005)(Court)("Tr.").[1]  The Court set a deadline

of seventy five days to complete discovery on qualified immunity.  See id. at 15:17-25 (Court).  The

Court later extended the deadline for discovery to 120 days.  See Order at 1, entered July 26, 2005

(Doc. 38).

The Defendants filed a motion for summary judgment contending, among other things, that

they enjoyed qualified immunity on Vondrak's federal claims.  See Defendants' Motion for

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Summary Judgment, filed March 2, 2006 (Doc. 52).  The Court granted summary judgment in part and denied it in part, holding that Defendants Cindy McCants and the City of Las Cruces were not entitled to summary judgment with respect to Vondrak's federal illegal arrest claims, that Defendant Nathan Krause was entitled to summary judgment on Vondrak's federal illegal-arrest claim, that McCants, Krause, and the City were not entitled to summary judgment on Vondrak's federal excessive-use-of-force claims, and that McCants, Krause, and the City were entitled to summary judgment on Vondrak's federal inadequate-medical-attention claims.  See MOO at 2.  In its MOO, the Court explained: "[B]ecause the initial stop at the checkpoint was legal and because the failure of three field-sobriety tests would give an arresting officer probable cause to arrest an individual for DUI, whether Vondrak's arrest was illegal hinges on whether McCants possessed reasonable suspicion to administer field-sobriety tests to Vondrak."  MOO at 23.  In that context, the Court held that Vondrak's admission that he "had one beer three hours ago" did not, as a matter of law, give law enforcement reasonable suspicion to conduct a sobriety test.  MOO at 25.

In June 2007, the Defendants appealed the Court's ruling to the United States Court of Appeals for the Tenth Circuit, arguing that the Court erred in denying qualified immunity to McCants on the illegal-arrest claim, and on denying immunity to McCants and to Krause on the excessive-force claim.  On August 5, 2008, the Tenth Circuit reversed the Court on the issue whether McCants had reasonable suspicion to conduct field sobriety tests.  The Tenth Circuit held: "Vondrak's statement that he 'had one beer three hours ago' provided McCants with reasonable suspicion to conduct field sobriety tests, or at the very least provided her with 'arguable reasonable suspicion' entitling her to qualified immunity."  Vondrak v. City of Las Cruces, 535 F.3d at 1207.  The Tenth Circuit affirmed the Court in its denial of summary judgment on the excessive-force claim.  See id. at 1208.

-3-

The Defendants filed a writ of certiorari with the Supreme Court of the United States on November 3, 2008.  The Supreme Court denied certiorari on January 21, 2009.  See City of Las Cruces, N.M. v. Vondrak, 129 S. Ct. 1003, 1003 (2009).  On January 9, 2009, the Court granted the parties' Joint Motion to Extend Discovery Deadlines and set the discovery deadline as February 27, 2009.  See Order at 1, entered January 9, 2009 (Doc. 134).  The Court also set the deadline for discovery motions for March 5, 2009, and the deadline for pre-trial motions for March 10, 2009. See id.  This case is set for trial on April 13, 2008.  The Court did not set any new deadlines for filing motions to amend the pleadings.

In light of the Tenth Circuit's ruling, Vondrak now wishes to amend his Complaint to plead that his "Fifth, Fourteenth and Eighth Amendment rights were violated by the wrongful extended detention and subsequent false charge of driving under the influence of alcohol."  Brief at 4. Vondrak filed his Motion March 3, 2009.  According to Vondrak, "[t]he unlawful detention claim is compounded by the false charge of driving under the influence of alcohol made at the time of plaintiff's release from police custody on his own recognizance.  The two violations overlap and are treated as one for pleading purposes."  Id.  Vondrak contends that "[a]ll federal circuits are in agreement that an individual's detention beyond the time necessary to complete the law enforcement mission is a violation of a person's constitutional rights."  Id.

The Defendants respond that the Court should deny the amendment because there has been undue delay, because an amendment at this point would prejudice them, and because such an amendment would be futile because it fails to state a claim.  See Defendants' Response to Plaintiff's Motion to Amend Complaint at 1, filed March 17, 2009 (Doc. 152)("Response").  The Defendants note that this case has been on file for over four years and that the parties have conducted discovery. See id. at 4.  They contend that it is unfair to force them to defend this claim for the first time when

-4-

Vondrak could have brought the claim four years ago in his original Complaint and before the summary-judgment stage. See id. at 5. The Defendants maintain that their argument has particular force, given that they already prevailed on the issues of reasonable suspicion and probable cause to arrest. See id.

To support their argument that the amendment would be futile, the Defendants state that Vondrak's Fifth Amendment claim should fail because the Fifth Amendment applies only "to claims intended or implied against federal agencies or officers." Response at 6 (citing Martinez v. Cordova, 676 F.Supp. 1068, 1070 (D.N.M. 1987, Burciaga, J.)). The Defendants also argue that there is no cognizable claim for illegal detention after the breath tests, because Vondrak was released after only two hours and does not allege that he was booked or forced to post bond. See Response at 6.

Vondrak replies that there has been no undue delay because there was no need for him to amend his Complaint before the Tenth Circuit issued its order. See Reply to Defendants' Response to Plaintiff's Motion to Amend Complaint at 1, filed March 24, 2009 (Doc. 158). Vondrak contends that the Court should grant leave to amend because the Tenth Circuit was silent about constitutional violation that occurred after it was known that the breath tests had been administered. See id. at 2.

### LAW REGARDING MOTIONS TO AMEND

Rule 15(a) of the Federal Rules of Civil Procedure provides:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Fed. R. Civ. P. 15(a).

Refusing leave to amend is generally only justified upon a showing of undue delay,

undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. It is well settled in this circuit that untimeliness alone is a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay. Furthermore, where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial.

Frank v. U.S. West, Inc., 3 F.3d 1357, 1365-66 (10th Cir. 1993)(internal citations, quotation marks, and bracket omitted). See Duncan v. Manager, Dep't of Safety, City & County of Denver, 397 F.3d 1300, 1315 (10th Cir. 2005)(quoting Frank v. U.S. West, Inc. and stating that resolving the issue whether to allow a plaintiff to file a supplement to his complaint is "well within the discretion of the district court"). "The . . . Tenth Circuit has emphasized that '[t]he purpose of [rule 15(a)] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" B.T. ex rel. G.T. v. Santa Fe Pub. Schools, No. CIV 05-1165 JB/RLP, 2007 WL 1306814 at * 2 (D.N.M. 2007)(Browning, J.)(quoting Minter v. Prime Equip. Co., 451 F.3d 1196, 1204 (10th Cir. 2006)). "Specifically, the . . . Tenth Circuit has determined that district courts should grant leave to amend when doing so would yield a meritorious claim." Burleson v. ENMR-Plateau Tel. Co-op., No. CIV 05-0073 JB/KBM, 2005 WL 3664299 at, *2 (D.N.M. 2005)(Browning, J.)(citing Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001)).

Under rule 16(b), the plaintiff is required to show good cause for any delay in modifying a scheduling order providing for the amendment of claims. See Fed. R. Civ. P. 16(b)(4)("A schedule may be modified only for good cause and with the judge's consent."). Rule 16(b) "focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment." Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schools, No. CIV 02-1146 JB/LFT, CIV 03-1185 JB/LFG, 2007 WL 2296955 at *3 (D.N.M. June 5, 2007)(Browning, J.). "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent

efforts."  Id.  The Tenth Circuit has suggested that the undue delay analysis under rule 15 and the

good-cause standard under rule 16(b) are roughly similar.  See Minter v. Prime Equipment Co., 451

F.3d 1196, 1205 n.4 (10th Cir. 2006).  The Tenth Circuit noted:

> Some Circuits hold that a party seeking to amend the pleadings, after a deadline set
> for such amendments in the scheduling order, must satisfy a "good cause"
> requirement.  This requires the moving party to show that it has been diligent in
> attempting to meet the deadlines, which means it must provide an adequate
> explanation for any delay.  This Circuit adopted a similar interpretation of Rule
> 16(b)'s "good cause" requirement in the context of counterclaims asserted after the
> scheduling order deadline, but has not done so in the context of an amendment to the
> complaint.

Id. (internal citations omitted). The Tenth Circuit explained that there is a "rough similarity between

the 'good cause' standard of Rule 16(b) and [its] 'undue delay' analysis under Rule 15."  Id.

## LAW REGARDING POST ARREST DETENTION

In the context of a warrantless arrest, "a policeman's on-the-scene assessment of probable

cause provides legal justification for arresting a person suspected of crime, and for a brief period of

detention to take the administrative steps incident to arrest."  Gerstein v. Pugh, 420 U.S. 103, 113-

114 (1975).  In County of Riverside v. McLaughlin, 500 U.S. 44 (1991), the Supreme Court of the

United States held that law enforcement may detain an individual after a lawful arrest pending a

neutral probable cause determination up to forty-eight hours without violating the constitution unless

the delay is unreasonable.  See 500 U.S. at 56.  The Supreme Court stated: "[A] jurisdiction that

provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter,

comply with the promptness requirement of Gerstein.  For this reason, such jurisdictions will be

immune from systemic challenges."  Id.  While provision for a determination of probable cause

within forty-eight hours will withstand a systematic challenge, in individual cases, a delay of forty

hours or less might result in a violation if the delay is unreasonable, see id., or if "conditions or

restrictions of pretrial detention . . . amount to punishment of the detainee," Bell v. Wolfish, 441 U.S. 520, 535 (1979).

## ANALYSIS

While the Court is normally liberal in allowing parties to amend their complaints so that disputes can be efficiently resolved on the merits, the Court believes the amendment Vondrak proposes is not warranted.  Vondrak has unduly delayed adding the claim, given that over four years have transpired, discovery has been conducted, and the summary judgment stage has past. Furthermore, to the extent the Proposed First Amended Complaint accomplishes what Vondrak says it does, which is to add a claim for the illegal detention after the breath tests, the claim is futile.  The Court has already held in this case that probable cause existed to initiate the arrest.  After arrest, the police detained Vondrak for only a short period of time.  The two-hour period the Vondrak was held before being released was reasonable for the police to conduct the administrative tasks associated with his arrest and to determine whether he should be held or released.  The Court believes that, because the detention was relatively short and was non-punitive, Vondrak does not have a viable claim for illegal detention.

## I.      THE PROPOSED AMENDMENT IS UNTIMELY.

Vondrak has argued that he is "permitted to amend his complaint under Rule 15(a) 1 and under Rule 15(b) 2[2] in the interest of justice."  Brief at 3.  Rule 15(a) allows a party to amend once as a matter of course "before being served with a responsive pleading; or . . . within twenty days

---

[2] Although Vondrak cites rule 15(b)(2), the Court assumes he means 15(a)(2). Rule 15(a)(2) instructs courts to freely grant leave to amend "when justice so requires." Fed. R. Civ. P. 15 (a)(2). It appears that Vondrak is seeking to invoke the proposition contained in rule 15(a)(2) and not the one in 15(b)(2), which deals with amending pleadings to conform to issues tried by implied or express consent.

after serving the pleading if a responsive pleading is not allowed and the action is not yet on the trial calendar." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). In other words, a party not qualifying for amendment as a matter of right may amend if, in its discretion, a court grants leave to do so. District courts are instructed to grant leave to amend freely when justice requires. "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." Frank v. U.S. West, Inc., 3 F.3d at 1365-66.

Vondrak cannot reasonably argue that he is entitled to amendment as a matter of right under rule 15(a)(1). A responsive pleading was filed nearly a half decade ago and litigation in this case has been protracted. Given that responsive pleadings have long been filed and served, Vondrak is not entitled to amendment as a matter of right. Vondrak therefore may amend only if the Court grants him leave to do so.

The deadline for motions to amend, which the Court set as five days before the initial scheduling conference, has past. Under rule 16(b), Vondrak must therefore show good cause for any delay in modifying a scheduling order providing for the amendment of claims. See Fed. R. Civ. P. 16(b)(4)("A schedule may be modified only for good cause and with the judge's consent."). Rule 16(b) "focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment." Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schools, No. CIV 02-1146 JB/LFT, CIV 03-1185 JB/LFG, 2007 WL 2296955 at *3 (D.N.M. June 5, 2007)(Browning, J.). "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." Id. Vondrak has not demonstrated good cause why he should be allowed

to amend.  The Tenth Circuit has stated that there is a "rough similarity between the 'good cause' standard of Rule 16(b) and [its] 'undue delay' analysis under Rule 15." Minter v. Prime Equipment Co., 451 F.3d at 1205 n.4.  There has been undue delay in Vondrak seeking to amend his pleadings.

The discovery deadlines are also past, and trial is approximately three weeks away.  The Court believes that it would be unfair to allow Vondrak to add a new claim that might entail new discovery and eleventh hour trial preparation on the part of the Defendants.

A district court is justified in denying leave to amend when there has been a showing of undue delay.  See Frank v. U.S. West, Inc., 3 F.3d at 1365-66.  In this case, Vondrak served the original Complaint more than four years ago in 2005.  The Court need not decide what the outer boundaries of timeliness are with motions to amend, but the Court believes it is justified in denying leave to amend after four years have gone by, given the circumstances of this case.

In Frank v. U.S. West, Inc., the Tenth Circuit affirmed a district court's denial of leave to amend where the motion to amend "was filed four months after the court's deadline for amending pleadings and because Plaintiffs knew or should have known long before that date that . . . [the defendant they sought to add] was a possible defendant." 3 F.3d at 1366.  In Woolsey v. Marion Laboratories, Inc., 934 F.2d 1452 (10th Cir. 1991), the Tenth Circuit upheld a district court's denial of leave to amend where the motion to amend came seventeen months after the original complaint was filed.  See 934 F.2d at 1462.  In affirming the district court, the Tenth Circuit noted that, in addition to being untimely, the party seeking leave to amend offered no good reason for the delay. See id.

Given the case law, the Court concludes it is on good ground to deny leave to amend here. Vondrak makes no realistic attempt to explain why he waited four years to amend his Complaint. While he notes in his brief that he is seeking to conform his Complaint to the Tenth Circuit's order,

-10-

it is not clear how that is the case. The Tenth Circuit found that the Defendants were entitled to summary judgment on some of Vondrak's claims. The Tenth Circuit did not, however, write its opinion in such a way that an amendment would be permitted or useful in light of its finding that summary judgment was warranted. Nor is it the case that new facts have come to light that compel the Court, in the interest of justice, to allow the amendment. It appears that Vondrak wishes to add a new claim, based on a new theory, which he could have added in his original Complaint. Now that discovery has played out, summary judgment is past, and this case is back in front of this Court on remand, the amendment is untimely, and the Court will not allow this amendment at this late stage.

## II.     **THE AMENDMENT IS FUTILE.**

While the Court finds that amendment at this point and under these circumstances is untimely, there is an alternative reason for denying leave to amend. In light of the Court's earlier ruling and the Tenth Circuit's order in this case, the claim Vondrak wishes to add is not a cognizable claim. The arrest was supported by probable cause, and the police held Vondrak for a relatively short period during which they completed their law-enforcement tasks in an apparently expeditious manner and then sent Vondrak on his way. Such circumstances do not give rise to a claim for illegal detention. Given that Vondrak fails to state a claim on the matter he wishes to add, an amendment would be futile. Even if the motion were timely, the Court would therefore deny it and preclude Vondrak from adding the claim.

### A.     **PROBABLE CAUSE SUPPORTS THE ARREST.**

In its MOO, the Court stated: "[B]ecause the initial stop at the checkpoint was legal and because the failure of three field-sobriety tests would give an arresting officer probable cause to arrest an individual for DUI, whether Vondrak's arrest was illegal hinges on whether McCants possessed reasonable suspicion to administer field-sobriety tests to Vondrak." MOO at 23. While

the Court denied summary judgment on the basis that there was no reasonable suspicion to conduct field sobriety tests, the Tenth Circuit reversed on that issue and found that there was reasonable suspicion. The Tenth Circuit did not disturb the Court's findings that the initial stop was lawful, or that the failed sobriety tests created probable cause to arrest Vondrak.

The Court does not believe the doctrine of law of the case bars it from revisiting its conclusion that the field-sobriety tests gave rise to probable cause. Generally, the doctrine of law of the case "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983). Law of the case is "merely a 'presumption, one whose strength varies with the circumstances.'" Been v. O.K. Industries, Inc., 495 F.3d 1217, 1225 (10th Cir. 2007)(quoting Avitia v. Metro. Club of Chicago, Inc., 49 F.3d 1219, 1227 (7th Cir.1995)). While a district court may depart from an original ruling that a higher court has issued only under narrow circumstances, "district courts generally remain free to reconsider their earlier interlocutory orders." Been v. O.K. Industries, Inc., 495 F.3d at 1225.

The Court's conclusion that the field-sobriety tests gave rise to probable cause is an interlocutory order and the Court has the discretion to revisit it. Nevertheless, the Court sees no reason to revisit that conclusion at this time. The Court believes it applied the law correctly and found that the field-sobriety amounted to probable cause. The Tenth Circuit did not disturb the Court's conclusion on that issue and quoted it. The Court will therefore decline to revisit it.

Given that the Court's initial conclusion that the stop was lawful and that the failed sobriety tests, if lawfully conducted, would constitute probable cause for an arrest, the Tenth Circuit's finding that there was reasonable suspicion to conduct field sobriety tests completes the chain validating the arrest. The stop was lawful. There was reasonable suspicion to conduct field-sobriety

tests.  Vondrak's inability to pass any of the field sobriety tests gave rise to probable cause.  The arrest was therefore lawful.

### B.        THE TWO-HOUR DETENTION WAS NOT EXCESSIVE.

Even though McCants had probable cause to arrest Vondrak, the Court must still determine whether the police held Vondrak longer than the Constitution permits such that Vondrak could state a cognizable claim.  The Court concludes that the two-hour period for which Vondrak was held was not unreasonable and that it therefore did not constitute a constitutional violation.  The Court therefore believes it would be futile for him to add a constitutional claim for illegal detention.

"[A] policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest."  Gerstein v. Pugh, 420 U.S. at 113-114.  Vondrak alleges that the two-hour period for which he was held and during which he was administered breath tests were excessive and resulted in a violation of his Fifth, Fourteenth, and Eighth Amendment rights.  The Court disagrees and finds that the police held Vondrak for only a brief period during which they conducted necessary administrative tasks and four breath tests.  The police released Vondrak without requiring him to post a bond and allowed him to go free.  Vondrak does not contend that he was restrained any further after he was released.  Rather, he admits that he was allowed to call his family to pick him up.

Even if the Court were to adopt Vondrak's generalized statement of the law "that an individual's detention beyond the time necessary to complete the law enforcement mission is a violation of a person's constitutional rights," Brief at 4, the Court does not believe that this detention was longer than necessary for the police to complete their law enforcement mission.  Vondrak does not cite any case law showing that two and a half hours of post-arrest detention are excessive.  The

Court, in its independent research, also has not found case law showing such a pretrial detention to be excessive. The Supreme Court has held that laws that allow law enforcement to hold a suspect who is arrested without a warrant on a police officer's determination of probable cause for up to forty-eight hours will survive constitutional scrutiny as long as the law provides for a judicial determination of probable cause within that time period. See McLaughlin v. County of Riverside, 500 U.S. at 56. In other words, when an officer has probable cause to arrest someone without a warrant, the longest law enforcement can hold a suspect without a subsequent neutral determination of probable cause to justify continued detention of the suspect is forty-eight hours. In individual cases, however, a detention period of less than forty-eight hours might amount to a constitutional violation if the police unreasonably delay release, see id., or if "conditions or restrictions of pretrial detention . . . amount to punishment of the detainee," Bell v. Wolfish, 441 U.S. 520, 535 (1979).

The two-and-a-half hours that Vondrak spent in jail after taking his breath tests did not amount to unreasonable delay, nor does it appear to amount to punishment. The Court imagines that, when someone is taken to a police facility after arrest, there are basic administrative tasks that arresting officers and others must complete with regard to the arrested individual. Those tasks take some time and will inevitably occasion delay. Such delay to complete administrative tasks is not unreasonable. In this case, the police administered multiple breath tests, with time in between each test. This task of performing breath tests also contributed to the time Vondrak spent in jail. Vondrak alleges that he requested alcohol testing. He therefore cannot rightly argue that the alcohol testing was unnecessary or that it constituted a delay tactic.

The Court recognizes that a forty-eight hour period represents an outer limit within which a probable-cause determination must be made or a detainee released. The Court also recognizes that individual detentions might violate the constitution if extended for shorter amounts of time. In

Barnes v. District of Columbia, 242 F.R.D. 113 (D.D.C. 2007), the United States District Court for the District of Columbia held that a class of plaintiffs stated a cause of action for constitutional violations arising from extended detention where some plaintiffs were held for one day beyond the date upon which they were entitled to release.  See id. at 117-19.  The plaintiff class consisted of individuals who alleged that the District of Columbia's Department of Corrections detained them after their ordered release dates.  See id. at 115.  The overdetentions, which ranged from one day to eleven months for some, stemmed, in part, from delays in the Department of Correction's execution of the ministerial tasks associated with outprocessing the individuals.  See id.

Under the circumstances in Barnes v. District of Columbia, the district court held that the plaintiffs stated a claim, and that County of Riverside v. McLaughlin did not apply.  Barnes v. District of Columbia, 242 F.R.D. at 118.  In holding that County of Riverside v. McLaughlin did not preclude a cause of action, the district court in Barnes v. District of Columbia noted that the forty-eight hour period discussed in County of Riverside v. McLaughlin represented an outer boundary at which overdetention becomes unreasonable, and that the law-enforcement interests implicated in the time-consuming outprocessing of prisoners ordered to be released are less significant than those involved in the brief detention during which law enforcement must obtain a determination of probable cause that a crime has been committed.  See Barnes v. District of Columbia, 242 F.R.D. at 118.

The District of Columbia's analysis in Barnes v. District of Columbia does not convince the Court that Vondrak states a claim for extended detention.  This is not an overdetention case.  Unlike the prisoners in Barnes v. District of Columbia, who had already been found to be entitled to release, at the time of his detention, Vondrak was being held while law enforcement conducted preliminary administrative matters and administered multiple breath tests to check his blood-alcohol content.

Essentially, the police were determining whether they should continue to hold Vondrak and whether they should charge him with any crimes.  The Court believes the police were relatively prompt in deciding, in the end, to release Vondrak after only a few hours of detention.

Ultimately, it is difficult for the Court to imagine a person who was lawfully arrested for driving under the influence spending less than two hours in the hands of law enforcement before being released on his own recognizance.  The Court is unwilling to find, as a matter of law, that a person under such circumstances, having been arrested based on probable cause of driving under the influence, and having been held for only two hours, has a cause of action for illegal detention.

Aside from the fact that the case law does not support such a holding, the Court believes a holding along such lines would have adverse policy implications.  Law-enforcement officers must strike a careful balance when they arrest individuals suspected of driving under the influence.  They must assure that they respect the individual's constitutional rights.  At the same time, however, they must be cognizant that a person they suspect to be driving under the influence presents an immediate risk of harm to the public and to himself.  While the Court makes no comment on how long the police may hold a person suspected of driving under the influence after discovering that the individual was not, in fact, intoxicated, the Court is comfortable concluding that, where the police made a valid determination that there was probable cause to arrest someone for driving under the influence, two and a half hours of detention is reasonable.

Vondrak argues that the police knew he was innocent and yet continued to hold him and even cited him falsely for a misdemeanor for driving under the influence.  The Court reiterates that the arrest was based on probable cause, which the police had after observing Vondrak fail three field sobriety tests.  In the end, the misdemeanor was dismissed.  Nevertheless, there was probable cause at the time for the arrest and brief detention.

-16-

The Court also does not believe Vondrak is accurate in saying that his proposed amendment merely changes the constitutional theory under which he originally pled without raising new factual allegations.  Although the proposed First Amended Complaint lacks a great deal of clarity about what Vondrak wishes to plead, it is apparent that he desires to add a claim for extended detention for the time period after his breath tests returned a reading of 0.00.

Because the new claim that Vondrak wishes to raise is not a cognizable one, the Court does not believe it would be appropriate to add it at this point.  The Court therefore concludes that this belated attempt to amend the Complaint is inappropriate and will deny the motion.  Vondrak's original Complaint, however, states: "Plaintiff was released on his own recognizance by Supervising Officer Sergeant Todd Gregory after he passed the breath tests.  Plaintiff estimates that by this time his wrists were tightly handcuffed for a period of at least an hour and a quarter or longer." Complaint ¶ 17, at 4.  In the Proposed First Amended Complaint and in his support briefing, Vondrak now wishes to allege that, after his breath test results, he was illegally detained longer than necessary.  It is therefore apparent that Vondrak wishes to plead new facts and add a new claim. The Court therefore does not see the motion to amend as merely redrafting to meet technicalities while leaving the heart of the existing claims undisturbed.  Instead, this is a new claim, with new factual allegations and new legal theories.  The Court believes the new claim Vondrak wishes to add is futile.

**IT IS ORDERED** that the Plaintiff's Motion to Amend Complaint is denied.


_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Barry J. Byrnes
Las Cruces, New Mexico

      *Attorney for the Plaintiff*

Harry S. Connelly, Jr.
  Deputy City Attorney for the
    City of Las Cruces
Las Cruces, New Mexico

-- and --

William L. Lutz
David P. Lutz
Martin, Lutz, Roggow, Hosford & Eubanks, P.C.
Las Cruces, New Mexico

      *Attorneys for Defendants City of Las Cruces, Cindy McCants,*
        *and Nathan Krause*