IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN VONDRAK,

    Plaintiff,

vs.                                                                       No. CIV-05-0172 JB/LFG

CITY OF LAS CRUCES, POLICE OFFICER,
CINDY MCCANTS and NATHAN KRAUSE
Individuals and employees of the Las Cruces Police
Department, and CITY OF LAS CRUCES,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendants' Motion to Compel and for Determination of Objections, filed March 3, 2009 (Doc. 141). A thorough review of the briefing convinces the Court that there is sufficient information to rule without a hearing. The primary issues are: (i) whether the Court should compel Plaintiff John Vondrak to supplement his responses to certain Interrogatories and Requests for Production; (ii) whether the Court should compel depositions of certain witnesses discussed in the Letter from David Lutz to Barry Byrnes, dated February 9, 2009 (Doc. 141-5); (iii) whether the Court allow the Defendants to depose any witnesses that the Defendants contend should have been disclosed in response to Interrogatory Nos. 4, 5, and 6; and (iv) whether the Court should award the Defendants attorney's fees for litigating this motion. Because some of the information that the Defendants seek is relevant and not privileged, the Court will order Vondrak to produce some of it. The Court will set limits on time frames for which some of the information will be produced. The Court will also order Vondrak to provide days for the depositions that the Defendants seek. Because the Court does not believe Vondrak had a good faith

basis for withholding some of the discovery at issue on this motion, Court will order reasonable attorney's fees.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts leading up to this lawsuit are largely set forth elsewhere. See Vondrak v. City of Las Cruces, 535 F.3d 1198, 1200-03 (10th Cir. 2008); Memorandum Opinion and Order at 2-7, filed May 14, 2007 (Doc. 80)("MOO"). Briefly, Vondrak has sued for civil rights violations arising from his arrest for driving under the influence. The case is one of the oldest on the Court's docket. Vondrak filed his original Complaint on February 16, 2005. See Complaint, filed February 16, 2005 (Doc. 1). Shortly thereafter, the Court issued an initial scheduling order stating: "Any motions to amend pleadings and/or to join additional parties shall be filed and served five days prior to the Rule 16 scheduling conference." Initial Scheduling Order at 1-2, entered March 30, 2005 (Doc. 11). The Court held the initial scheduling conference on April 22, 2005. At the initial scheduling conference, the Court restricted discovery to issues relevant to the Defendants' qualified immunity defense. See Transcript of Initial Scheduling Conference at 13:8-20 (taken April 22, 2005)(Court)("Tr.").[1] The Court set a deadline of seventy five days to complete discovery on qualified immunity. See id. at 15:17-25 (Court). The Court later extended the deadline for discovery to 120 days. See Order at 1, entered July 26, 2005 (Doc. 38).

The Defendants filed a motion for summary judgment contending, among other things, that they enjoyed qualified immunity on Vondrak's federal claims. See Defendants' Motion for Summary Judgment, filed March 2, 2006 (Doc. 52). The Court granted summary judgment in part and denied it in part, holding that Defendants Cindy McCants and the City of Las Cruces were not

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

entitled to summary judgment with respect to Vondrak's federal illegal arrest claims, that Defendant Nathan Krause was entitled to summary judgment on Vondrak's federal illegal-arrest claim, that McCants, Krause, and the City were not entitled to summary judgment on Vondrak's federal excessive-use-of-force claims, and that McCants, Krause, and the City were entitled to summary judgment on Vondrak's federal inadequate-medical-attention claims.  See MOO at 2.  In its MOO, the Court explained: "[B]ecause the initial stop at the checkpoint was legal and because the failure of three field-sobriety tests would give an arresting officer probable cause to arrest an individual for DUI, whether Vondrak's arrest was illegal hinges on whether McCants possessed reasonable suspicion to administer field-sobriety tests to Vondrak."  MOO at 23.  In that context, the Court held that Vondrak's admission that he "had one beer three hours ago" did not, as a matter of law, give law enforcement reasonable suspicion to conduct a sobriety test.  MOO at 25.

In June 2007, the Defendants appealed the Court's ruling to the United States Court of Appeals for the Tenth Circuit, arguing that the Court erred in denying qualified immunity to McCants on the illegal-arrest claim, and on denying immunity to McCants and to Krause on the excessive-force claim.  On August 5, 2008, the Tenth Circuit reversed the Court on the issue whether McCants had reasonable suspicion to conduct field sobriety tests.  The Tenth Circuit held: "Vondrak's statement that he 'had one beer three hours ago' provided McCants with reasonable suspicion to conduct field sobriety tests, or at the very least provided her with 'arguable reasonable suspicion' entitling her to qualified immunity."  Vondrak v. City of Las Cruces, 535 F.3d at 1207.  The Tenth Circuit affirmed the Court in its denial of summary judgment on the excessive-force claim.  See id. at 1208.

The Defendants filed a writ of certiorari with the Supreme Court of the United States on November 3, 2008.  The Supreme Court denied certiorari on January 21, 2009.  See City of Las

Cruces, N.M. v. Vondrak, 129 S. Ct. 1003, 1003 (2009). On January 9, 2009, the Court granted the parties' Joint Motion to Extend Discovery Deadlines and set the discovery deadline as February 27, 2009. See Order at 1, entered January 9, 2009 (Doc. 134). The Court also set the deadline for discovery motions for March 5, 2009 and the deadline for pre-trial motions for March 10, 2009. See id. This case is set for trial on April 13, 2009. The Court did not set any new deadlines for filing motions to amend the pleadings.

This motion arises out of a discovery dispute. The Defendants served their First Set of Interrogatories and Requests for Production of Documents to Vondrak on October 13, 2008. See Motion at 1. After the Defendants served their First Set of Interrogatories and Requests for Production of Documents on Vondrak, Vondrak's counsel suffered from an unforeseen medical emergency. As a result of the medical emergency, the parties agreed to an extension for Vondrak to serve his responses. See Motion at 1. Vondrak served the Defendants with his responses on January 16, 2009. See Exhibit A to Motion, Plaintiff's Answers to Defendants' First Set of Interrogatories and Requests for Production of Documents to Plaintiff (Doc. 141-2). Believing certain responses to be inadequate, the Defendants wrote to Vondrak's counsel outlining their concerns regarding those discovery responses they believed to be inadequate. See Exhibit B to Motion, Letter from David P. Lutz to Barry J. Byrnes at 1, dated January 20, 2009 (Doc. 141-3). Vondrak's attorney responded to the Defendants' letter but declined to supplement his responses. See Exhibit C to Motion, Letter from Barry J. Byrnes to David P. Lutz at 1, date not given (Doc. 141-4). Given that the parties have reached an impasse regarding Vondrak's discovery responses, the Defendants now seek an order from the Court overruling Vondrak's objections and compelling him to supplement his responses. The Defendants also seek to compel the depositions of certain witnesses. See Motion at 2; Exhibit D to Motion, Letter from David P. Lutz to Barry J. Byrnes,

dated February 9, 2009 (Doc. 141-5).

1.  **Written Discovery.**

There are various Interrogatories and Requests for Production at issue in this motion. For clarity, the Court will set forth those Interrogatories and Requests for Production, along with Vondrak's objections.

> **INTERROGATORY NO. 4**: Identify by name, address, and telephone number all of your employees in Las Cruces, whether employed by you, Orthodontix, LTD, P.C., National Orthodontix Management, LLC, or any other name or entity under which you have practiced dentistry and/or orthodontics, since January 1, 2000.
>
> **RESPONSE:** Plaintiff objects to the release of this information as privileged and confidential and as potentially disruptive of his businesses. Plaintiff provided defendants with all medical records that will enable them to evaluate his injury. Plaintiff has submitted to independent medical examination.
>
> **INTERROGATORY NO. 5:** Identify by name, address, and telephone number all other dentists and/or orthodontists who have practiced with you, Orthodontix, LTD, P.C., National Orthodontix Management, LLC, or any other name or entity under which you have practiced dentistry and/or orthodontics, in Las Cruces, since January 1, 2000.
>
> **RESPONSE:** Plaintiff objects to the release of this information as privileged and confidential and for the same reasons stated in response to interrogatory 4.
>
> **INTERROGATORY NO. 6:** Please identify, by name, address, and telephone number the person that you were picking up at the airport on August 18, 2003?[sic].
>
> **RESPONSE:** Plaintiff searched his records for the name of the person he picked up at the airport and could not locate the name of that person. The information is no longer relevant as the Tenth Circuit Decision limited the issues to be litigated at trial.
>
> **INTERROGATORY NO. 7:** Please identify any license and/or certification you hold, or have held, issued by the Federal Aviation Administration since January 1, 2000.
>
> **RESPONSE:** Plaintiff objects to the release of this information as privileged and confidential. The existence of a license or certificate is not relevant or material to any issue raised in this lawsuit with respect to the excessive force in the application of handcuffs by the arresting officers and who ignored his complaints about the tightness of the handcuffs.

**INTERROGATORY NO. 8:** Please identify the date, location, and examining doctor of any examination related to the issuance of a medical certificate by the Federal Aviation Administration since January 1, 1990.

**RESPONSE:** Plaintiff objects to the release of this information as privileged and confidential. The nature of this examination is not relevant or material to any issue raised in this lawsuit. The time reference is unduly broad. In addition, Defendants have the benefit of an independent medical examination and medical reports that focus on the injury Plaintiff sustained as a result of the handcuffing incident.

**INTERROGATORY NO. 9:** Please identify the names, addresses, and telephone numbers of any and all physicians, counselors, and/or therapists who have provided medical care, counseling, and/or treatment to Plaintiff since January 1, 1996.

**RESPONSE:** Plaintiff objects to the question as being unduly broad in scope. Plaintiff provided all information about doctors and hospitals concerning medical care and treatment sought and received as a result of the handcuffing incident. Plaintiff has not had any injury to his hands or wrists prior to August 18, 2003 and does not claim that he sustained an aggravation of a pre-existing injury.

**INTERROGATORY NO. 12:** Please state whether or not Plaintiff is claiming any loss of earnings or earning capacity as a result of the incident and injuries alleged in Plaintiff's Complaint. If so, please state:

   a. The amount and manner of computation;

   b. The period for which loss is claimed;

   c. The name and address and telephone number of the person who presently has possession or custody of any records or documents in support of his claim for lost wages or earning capacity.

**RESPONSE:** Plaintiff requested his chief financial officer, Christel Winkler to perform a comparative study of his business between [sic] for the year 2003. Plaintiff lost time from his business in 2003 because of the handcuffing incident at the expense of the practice and business development. The study will reflect that loss. The CFO is also directed to support her study with tax and business records for the year 2003. Plaintiff reserves the right to supplement this interrogatory as that study may not be available on the date of service of the interrogatory responses.

**REQUEST FOR PRODUCTION NO. 2:** Produce a copy of any federal and state income tax returns, balance sheets, and income statements for you and/or all entities identified in response to Interrogatory Number 1 for the years 2002 through the present.

**RESPONSE:** Plaintiff objects to the production of any federal and state income tax returns, balance sheets, and income statements as said documents are not relevant or material to any issue raised in this lawsuit. Plaintiff asked his CFO to gather records for 2003 and 2003 that support his claim to reduced profit caused by the handcuffing incident. The pertinent tax records that support his claim are to be produced by the CFO. Plaintiff reserves the right to supplement this request for production with those records as the CFO is gathering the information for him.

**REQUEST FOR PRODUCTION NO. 3:** Produce any communications between you and the New Mexico Board of Dental Health Care between January 1, 2000 and present, including but not limited to licenses, certificates, application, applications for renewal, and disclosures of the alleged injury at issue in this lawsuit.

**RESPONSE:** Plaintiff objects to the production of any communications between himself and the New Mexico Board of Dental Health Care between January 1, 2000 and present, including but not limited to licenses, certificates, applications, or applications for renewal. Said document request has no relevance to any issue raised in this lawsuit.

**REQUEST FOR PRODUCTION NO. 8:** Produce any communications between you and the Federal Aviation Administration between January 1, 2000 and present, including but not limited to licenses, certificates, applications for renewal, and disclosures of the alleged injury at issue in this lawsuit.

**RESPONSE:** Plaintiff objects to the production of any communications between himself and the Federal Aviation Administration between January 1, 2000 and present, including but not limited to licenses, certificates, applications, or applications for renewal. Said document requests has no relevance to any issue raised in this lawsuit.

**REQUEST FOR PRODUCTION NO. 12:** Please execute the form, attached as Exhibit "A," authorizing Defendants to obtain medical records on Plaintiff from January 1990 to present.

**RESPONSE:** Plaintiff objects to any general authorization for the release of any and all of his medical records on the grounds that such information is privileged and confidential. The request is unduly broad and beyond the scope of the medical issues involved in this lawsuit. Plaintiff has provided his medical records regarding his injury and consented to an independent medical examination to be a doctor selected by defendants.

**2.    The Depositions.**

The Defendants request depositions for witnesses whom they list in the February 9, 2009

letter from David P. Lutz to Barry J. Byrnes.  See Motion at 17.  Those witnesses are: Dr. Pawan Jain, Dr. Lindsey, Mr. Gaut, Daniel Dolan, Wanda Rose, and Christel Dinkler.[2]  See February 9, 2009 Letter from David P. Lutz to Barry J Byrnes at 1.  The Defendants contend that, as of the filing of their motion, Vondrak has not provided dates of availability.  The Defendants also represent in their motion that, as they were making final edits to the motion, Vondrak's attorney sent an electronic mail regarding the depositions.  Although Vondrak's attorney did not provide specific dates, the communications were such that the Defendants state in their motion their belief that the parties will be able to make some progress on the question of these depositions before the hearing.  See Motion at 17.

The Defendants' confidence in the progress toward a resolution of the deposition issues, however, appears to have been short-lived.  In their reply, the Defendants assert that they received dates of availability for Dr. Jain and Mr. Dolan on March 16, 2009.  See Defendants' Reply in Support of Their Motion to Compel and for Determination of Objections at 2, filed March 26, 2009 (Doc. 168)("Reply").  The Defendants contend, however, that Vondrak has not provided dates for Ms. Rose, Ms. Dinkler, or Dr. Lindsey.  Defendants set Dr. Jain's deposition for March 25, 2009, one of the dates in which he was said to be available.  See Exhibit C to Reply, Notice Deposition Duces Tecum, Dated March 20, 2008 (Doc. 168-4); Exhibit B to Reply, Electronic Mail Message from Bobbie Hernandez to David. P. Lutz, dated March 16, 2009 (Doc. 168-3)("In the above referenced case, Dr. Pawan Jain is available for depositions at 8:00 a.m. the week of March 23-March 27.").  Vondrak subsequently filed a motion to quash the subpoena, stating: "The subpoena should be quashed because defense counsel is seeking to take the deposition of Dr. Jain out of time

---

[2] The Court has given the full names of these witness to the extent they are available upon the information before the Court.

without permission of the Court. . . ." Motion to Quash Subpoena ¶ 4, at 2, filed March 23, 2009 (Doc. 156).[3] Thus, the parties have not been able to resolve their differences regarding the depositions.

## ANALYSIS

Vondrak's responses to the Interrogatories and Requests for Production at issue on this motion are, for the most part, inadequate. Vondrak has asserted confidentiality and privilege for much of the information these Interrogatories and Requests for Production seek. The Court finds, however, that Vondrak must produce much of the information sought within five days of entry of this Memorandum Opinion and Order, given that much of the information is relevant and non-privileged.

The Court will also order Vondrak to set dates for depositions of witnesses for which he has not already provided dates – including for Dr. Jain. Vondrak has three days from the entry of this Memorandum Opinion and Order to set deposition dates for the witnesses identified in the February 9, 2009 letter. Regarding potential witnesses that responses to the written discovery at issue in this motion might produce, the Court will require Vondrak to provide deposition dates within the five-day deadline which the Court has set for the written discovery. In other words, Vondrak has five days to produce the written discovery regarding witnesses consistent with this Memorandum Opinion and Order and deposition dates for those witnesses. For the witnesses already identified in the February 9, 2009 Letter, Vondrak has three days to provide dates for depositions.

---

[3] Vondrak's other basis for the motion to quash is that the Defendants have asked Dr. Jain to produce his file on communications between Dr. Vondrak and for all communications between Dr. Jain and attorneys Barry Byrnes and Daniel A. Dolan – all information that Vondrak alleges is privileged and confidential. Vondrak's objection to Dr. Jain producing such information does not bear directly on this motion and whether Dr. Jain should be compelled to appear for a deposition.

**I.     THE COURT WILL ORDER VONDRAK TO PRODUCE MOST OF THE WRITTEN DISCOVERY AT ISSUE IN THIS MOTION.**

Rule 26(b)(1) permits parties to obtain discovery on any matter that is not privileged and is at least reasonably calculated to lead to the discovery of admissible evidence.  "The deposition-discovery rules are to be accorded a broad and liberal treatment."  Schlagenhauf v. Holder, 379 U.S. 104, 114-15 (1964).  See Sanchez v. Matta, 229 F.R.D. 649, 654 (D.N.M. 2004, Browning, J.)("The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve full disclosure of all potentially relevant information.").  Although "privileged matters are not subject to rule 26's broad discovery requirements," Sanchez v. Matta, 229 F.R.D. at 654, "[a] party seeking to assert the privilege must make a clear showing that it applies," Peat, Marwick, Mitchell & Co. v. West, 748 F.2d 540, 542 (10th Cir. 1984).

**A.     VONDRAK MUST PRODUCE THE REQUESTED INFORMATION REGARDING HIS EMPLOYEES AND OTHER DENTISTS AND ORTHODONTISTS WITH WHOM HE HAS WORKED SINCE JANUARY 1, 2000.**

Through Interrogatory Nos. 4 and 5, the Defendants seek names, addresses, and telephone numbers for all of Vondrak's employees and for all other dentists and/or orthodontists who have practiced with him.  Vondrak asserts that this information is confidential and privileged, and that production of the information has the potential to disrupt his business.  The Court finds the assertion of privilege on these matters unpersuasive.  Neither federal law nor the New Mexico Rules of Civil Procedure provide a privilege such as the one Vondrak claims in this matter.  Moreover, the information that Interrogatory Nos. 4 and 5 seek is relevant. Vondrak testified at his deposition that his alleged injury affected his ability to work and produce income.  See Exhibit E to Motion at 109:2-20; 110:21-111:7 ("Vondrak Depo.").  Employees from his offices and other dentists and orthodontists with whom Vondrak has worked may have discoverable knowledge related to his

alleged injuries and damages. The Defendants are entitled to the information they seek in Interrogatory Nos. 4 and 5, and the Court will order Vondrak to produce it.

> **B.     VONDRAK MUST PRODUCE SOME OF THE INFORMATION REQUESTED IN INTERROGATORY NOS. 7, 8, AND 9, AND REQUEST FOR PRODUCTION NO. 8.**

In Interrogatory Nos. 7, 8, and 9, the Defendants ask Vondrak to identify any license and/or certificate he holds, or has held, with the Federal Aviation Administration since January 1, 2000, the date, location, and examining doctor for any examinations related to issuance of a medical certificate from the Federal Aviation Administration since January 1, 1990, and names, addresses, and telephone numbers of any and all physicians, counselors, and/or therapists who have provided Vondrak with medical care, treatment, or therapy since January 1, 1996. Through Request for Production No. 8, the Defendants seek the production of any communications Vondrak has had with the Federal Aviation Administration between January 1, 2000 and the present. Vondrak has not demonstrated that this information is privileged. Much of the information is also relevant to injury and damages. Given the Federal Aviation Administration's regulations regarding the requirements for medical certificates, discovery regarding Vondrak's licensure and his communications with the Federal Aviation Administration may lead to relevant and admissible evidence about his injury and damages. Vondrak must produce that information.

Information regarding medical examinations – including examinations related to the issuance of a medical certificate may also lead to relevant and admissible evidence. Vondrak needs to produce some of the information requested in Interrogatory No. 9. In negotiations leading to this motion, the Defendants offered to limit Interrogatory No. 9 to injuries related to Vondrak's hands and wrists. See January 20, 2009 Letter at 2. The Court believes The Defendants are under no obligation to accept Vondrak's denial of a pre-existing injury. This question is open to discovery.

Vondrak has placed his medical condition at issue. The Court believes, however, that the limitation that the Defendants originally proposed is a proper one. Accordingly, the Court will limit Interrogatory No. 9 to injuries related to Vondrak's hands and wrists.

Defendants' Interrogatory No. 8 also sweeps too broadly. The older the information the Defendants seek gets, the more attenuated its relationship to any issues in this case. The Court will therefore not compel Vondrak to produce all of the information requested regarding doctor's examinations for a medical certificate. The Court will order Vondrak to produce the information requested in Interrogatory No. 8 since January 1, 1996. That date cuts off that information that is likely too old to be relevant to this case. This is the same cut off date used in Interrogatory No. 9.

### C. VONDRAK MUST PRODUCE THE COMPARATIVE STUDY OF HIS BUSINESS.

Interrogatory No. 12 and Request for Production No. 2 relate to whether Vondrak will be claiming loss of earnings or earning capacity. The Defendants have asked Vondrak to disclose the amount of such damages Vondrak will seek, the period of loss, and the name and contact information for the person who has custody of any records or documents in support of any claim for lost earnings or earning capacity. The Defendants have also asked for copies of federal and state income tax returns, balance sheets, and income statements for Vondrak and his businesses for the years 2002 through the present.

Vondrak has represented to the Defendants that his chief financial officer is preparing a comparative study of Vondrak's business to determine the impact Vondrak's injuries might have had. Vondrak also states that copies of income tax returns, balance sheets, and income statements are not relevant or material to any issue raised in the lawsuit. Vondrak maintains that his chief financial officer will produce any pertinent tax and/or business records.

The relief the Defendants seek in this motion is that the Court compel production of the comparative study. The Court will order production of the study. The Defendants are not required to take the word of Vondrak's expert on damages, and the Court will also order production of the requested tax and business records at this time. Vondrak is withholding discoverable information regarding his methodology for determining lost earnings or lost earning capacity, and the data to test that methodology. Vondrak is withholding discoverable information and needs to disclose that information. Vondrak needs to provide the information requested in Interrogatory No. 12 under oath.

### D. VONDRAK SHALL PRODUCE COMMUNICATIONS BETWEEN HIM AND THE NEW MEXICO BOARD OF DENTAL HEALTH CARE BETWEEN JANUARY 1, 2000 AND THE PRESENT.

Vondrak contends that communications between him and the New Mexico Board of Dental Health Care, which the Defendants seek through Request for Production No. 3, are not relevant to any issue in this case. The Court disagrees. Vondrak has alleged that the injuries he received from the handcuffs resulted in a loss of motor function. See Vondrak Depo. at 51:2-51:5 ("No. I got worried when I started dropping things. I started getting worried when I dropped things, and I didn't know I was dropping them. That's why I went to see [the doctor]."). The New Mexico Administrative Code has a complaint procedure for licensed dentists who suffer from physical illness, "including . . . loss of motor skills." N.M.AC. 16.5.2.8(B). Vondrak testified that he did not report his injury to the New Mexico Board of Dental Health Care. See Vondrak Depo. 111:8-111:12. When asked whether there was "any reason to report [his] injury to the licensing board," Vondrak responded: "Absolutely no reason in the world that I'm aware of." Id. The Court believes it proper that the Defendants be allowed to assess the credibility of such a statement. The evidence is relevant to a potential admission against interest related to the injury, or, if record of the injury

-13-

exists, as confirming evidence to which the Defendants are entitled. The Court will therefore compel Vondrak to produce the information requested in Request for Production No. 3.

### E. THE DEFENDANTS ARE ENTITLED TO OBTAIN SOME MEDICAL RECORDS, BUT NOT TO THE EXTENT THEY SEEK.

In Request for Production No. 12, the Defendants ask Vondrak to release his medical records from January 1990 to the present. While the Court believes the Defendants are entitled to some of this information, they have cast too large a net. Vondrak's medical records dating back to 1990 are not likely to be relevant. The Court believes that, for the purposes of this lawsuit, the Defendants should be able to obtain Vondrak's medical records from January 2000 to the present. In other words, the Court will order Vondrak to execute a release authorizing the Defendants to obtain medical records from January 2000 to the present. That time frame more likely sweeps in information relevant to this lawsuit.

### F. VONDRAK MUST STATE UNDER OATH THAT HE DOES NOT KNOW THE IDENTITY OF THE INDIVIDUAL TO WHICH INTERROGATORY NO. 6 REFERS.

The Defendants seek the identity and contact information for an individual whom Vondrak picked up at the airport on August 18, 2003, and with whom he discussed matters related to his arrest and resulting injuries. Vondrak represents that he does not have the requested information. If his representation is true, it is not reasonable to compel Vondrak to produce information he does not have. The Court will therefore not compel him to produce the information. Vondrak must, however, state under oath that he does not know the individual's name, that he has carefully reviewed all records that would produce her name, and that he does not have her contact information, current or otherwise.

Ultimately, the Court overrules most of Vondrak's objections to the written discovery at

issue. Vondrak has five days to produce the information and documents consistent with this Memorandum Opinion and Order. Specifically, Vondrak has five days to serve amended answers to interrogatories, including an answer stating under oath that he does not know the name of the individual he picked up at the airport on August 18, 2008, that he has carefully reviewed all records that would produce her name, and that he does not have her contact information, current or otherwise.

### III. VONDRAK HAS THREE DAYS TO PROVIDE DATES FOR THE DEPOSITIONS OF WITNESSES IDENTIFIED IN THE FEBRUARY 9, 2009 LETTER.

It is apparent from the briefing and from the motion to quash that Vondrak has objected to depositions, at least in part, because the time has past for taking depositions. The parties, however, originally agreed to an extension of time for discovery to February 27, 2009, in part because Vondrak's attorney had a medical emergency. See Joint Motion to Extend Discovery Deadlines at 1-2, filed December 10, 2008 (Doc. 131); Order, entered January 9, 2009 (Doc. 134)(granting the Joint Motion to Extend Discovery Deadlines). The Defendants, through their February 9, 2009 letter, requested dates for depositions to which they were entitled within the discovery period. As of the filing of this motion, Vondrak had not provided the dates that the Defendants requested in the February 9, 2009 letter. The Court had set the deadline for discovery motions for March 5, 2009 and the deadline for pre-trial motions for March 10, 2009. See id. The Defendants filed this motion on March 3, 2009 – within the deadline for discovery motions. It is Vondrak's delay in providing deposition dates in response to the Defendants' timely request that has necessitated depositions outside the discovery deadline. It is unfair for Vondrak to delay in providing a date for depositions he should know the Defendants are entitled to take, only to then move to quash a deposition set for dates he provided on the basis of untimeliness.

The witnesses for which Defendants seek depositions are Dr. Jain, Dr. Lindsey, Mr. Gaut, Daniel Dolan, Wanda Rose, and Christel Dinkler. The Defendants have received dates for Daniel Dolan. For the remaining witnesses, including Dr. Jain, Vondrak has three days from the date that this Memorandum Opinion and Order is entered to provide dates for depositions. If Vondrak does not provide the dates within three days, the Defendants will be permitted to schedule the depositions on any date they choose. Moreover, the Defendants request deposition dates for witnesses who will be identified when Vondrak provides the supplemental answers to his written discovery responses that the Court has ordered in this Memorandum Opinion and Order. Within the five-day deadline for serving supplemental answers to interrogatories, Vondrak must also provide deposition dates for the witnesses who will be identified in the written discovery. If Vondrak does not provide dates, the Defendants will be allowed to choose dates for depositions.

## IV. THE COURT WILL ORDER ATTORNEY'S FEES FOR A PORTION OF THIS MOTION.

The Court agrees with Vondrak that the record establishes that, for the most part, Vondrak is cooperating with the Defendants' discovery requests. See Response to Defendants' Motion to Compel and for Determination of Objections, filed March 13, 2009 (Doc. 147). Although discovery is designed to be largely self-executing, at times parties reach impasses and must approach the Court for resolution. When parties are making a good faith effort to fulfill their discovery obligations, while at the same time asserting good faith arguments when they feel certain requested information is not discoverable, the Court does not believe attorney's fees – which, at this stage would amount to a sanction – are appropriate.

Here, however, Vondrak has refused to provide information that he should have realized is relevant and may lead to admissible evidence. On the other hand, some of the Defendants' requests

were overbroad. The Court will require Vondrak to reimburse 50% of the costs and fees the Defendants incurred in preparing the motion and the reply. The Court believes that some cost-shifting is necessary in this case to make certain that litigating parties take their discovery responsibilities seriously and make a good-faith effort to comply without Court intervention. At the same time, the Court will not shift all of the costs because the Court saw merit to some of Vondrak's objections and sustained some of the objections in part.

**IT IS ORDERED** that the Defendants' Motion to Compel and for Determination of Objections is granted in part and denied in part. Vondrak has five days from the entry of this Memorandum Opinion and Order to produce the non-witness information the Court has ordered. Specifically, Vondrak also has five days to serve amended answers to interrogatories, under oath, including one stating under oath that he does not know the name of the individual he picked up at the airport on August 18, 2008, that he has carefully reviewed all records that would produce her name, and that he does not have her contact information, current or otherwise. At that time, Vondrak must also provide depositions dates for the witnesses that will be identified in the written discovery. Vondrak also has three days to provide dates for depositions of the witnesses listed in the February 9, 2009 Letter from David P. Lutz to Barry J. Byrnes. If Vondrak does not provide dates for depositions in a timely fashion, the Defendants will be allowed to choose the dates of their preference for those depositions.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Barry J. Byrnes
Las Cruces, New Mexico

>   *Attorney for the Plaintiff*

Harry S. Connelly, Jr.
  Deputy City Attorney for the
    City of Las Cruces
Las Cruces, New Mexico

-- and --

William L. Lutz
David P. Lutz
Martin, Lutz, Roggow, Hosford & Eubanks, P.C.
Las Cruces, New Mexico

>   *Attorneys for Defendants City of Las Cruces, Cindy McCants,*
>       *and Nathan Krause*