IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN VONDRAK,

       Plaintiff,

vs.                                            No. CIV 05-0172 JB/LFG

CITY OF LAS CRUCES, POLICE OFFICER,
CINDY MCCANTS and NATHAN KRAUSE
Individuals and employees of the Las Cruces Police
Department, and CITY OF LAS CRUCES,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff John Vondrak's Motion to Quash
Subpoena, filed March 23, 2009 (Doc. 156). The primary issues are: (i) whether the Court should
prevent the Defendants from deposing Plaintiff John Vondrak's treating physician, Dr. Pawan Jain;
and (ii) whether the Court should preclude discovery of Dr. Jain's file on Vondrak and of all
communications between Dr. Jain and Vondrak's attorneys. Because the Court has already ordered
the deposition, and because there is no subpoena to quash, the Court will deny the motion as to the
deposition. Moreover, because Dr. Jain's file on Dr. Vondrak and communications between Dr. Jain
and Vondrak's attorneys are not privileged, the Court will order Vondrak to produce that
information.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts leading up to this lawsuit are largely set forth elsewhere. See Vondrak v. City of
Las Cruces, 535 F.3d 1198, 1200-03 (10th Cir. 2008); Memorandum Opinion and Order at 2-7,
entered May 14, 2007 (Doc. 80)("MOO"). Briefly, Vondrak has sued for civil-rights violations

arising from his arrest for driving under the influence.  On March 3, 2009, the Defendants filed a motion to compel certain discovery items, including dates for depositions.  <u>See</u> Defendants' Motion to Compel and for Determination of Objections, filed March 3, 2009 (Doc. 141).  The Defendants sought, among other things, to depose Dr. Jain, and to have Dr. Jain produce his files on Vondrak and all communications between Dr. Jain and Vondrak's attorneys.  <u>See</u> <u>id.</u> at 17-18.  In the motion to quash, and elsewhere, Vondrak has objected both to the deposition, and to the production of Dr. Jain's file and Dr. Jain's communications with Vondrak's attorneys.  <u>See</u> Motion to Quash at 1. Vondrak's basis for objecting to setting the deposition is that the time has passed for discovery and that the deposition would accordingly be out of time.

Vondrak objects to the production of Dr. Jain's file and of communications between Dr. Jain and Vondrak's attorneys, because Vondrak believes that file and those communications are subject to the attorney-client privilege.  <u>See</u> <u>id.</u> at 1-2.  Vondrak contends that, as information protected under the attorney-client privilege, neither he nor Dr. Jain should be required to produce the information to the Defendants.  <u>See</u> <u>id.</u> at 2.

The Defendants represent that they cancelled the deposition they had previously scheduled with Dr. Jain upon receiving notice of this motion to quash.  <u>See</u> Defendants' Response to Plaintiff's Motion for [sic] Quash Subpoena, filed March 25, 2009 (Doc. 165)("Response").  Because they have cancelled the deposition – with the reservation that they still wish to depose Dr. Jain some time before trial – the Defendants argue that the motion to quash is now moot.  <u>See</u> <u>id.</u> at 2.  More fundamentally, the Defendants argue, there is no subpoena to quash.  They represent that they did not issue a subpoena and that this motion is therefore moot.  <u>See</u> <u>id.</u>

### <u>RULE 501 OF THE FEDERAL RULES OF EVIDENCE</u>

Rule 501 states:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.  However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Fed. R. Evid. 501.  Pursuant to rule 501, federal courts look to state law to determine the applicability of privileges "with respect to an element of a claim or defense as to which State law supplies the rule of decision."  Id.   In federal-question cases, "the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience" govern the existence and scope of a privilege.  Fed. R. Evid. 501.  See Motley v. Marathon Oil Co., 71 F.3d 1547, 1551 (10th Cir. 1995).

## ATTORNEY-CLIENT PRIVILEGE UNDER FEDERAL LAW

"The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." Trammel v. United States, 445 U.S. 40, 51 (1980). The privilege's purpose is "to encourage clients to make full disclosure to their attorneys." Fisher v. United States, 425 U.S. 391, 403 (1976).

"The [attorney-client] privilege protects 'confidential communications by a client to an attorney made in order to obtain legal assistance' from the attorney in his capacity as a legal advisor." Matter of Grand Jury Subpoena Duces Tecum Issued on June 9, 1982, to Custodian of Records, 697 F.2d 277, 278 (10th Cir. 1983)(quoting Fisher v. United States, 425 U.S. 391, 403 (1976)). Furthermore, "[t]he privilege is to be construed narrowly." Matter of Grand Jury Subpoena Duces Tecum Issued on June 9, 1982, to Custodian of Records, 697 F.2d at 278.

-3-

## NEW MEXICO'S ATTORNEY-CLIENT PRIVILEGE

Under New Mexico law, the attorney-client privilege applies to "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." Bd. of Comm'rs of Dona Ana County v. Las Cruces Sun News, 2003-NMCA-102, ¶ 25, 134 N.M. 283, 76 P.3d 36, 44; NMRA 11-503(B).

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client,
>
> (1) between the client and the client's lawyer or his lawyer's representative, or
>
> (2) between the client's lawyer and the lawyer's representative, or
>
> (3) by the client or client's lawyer to a lawyer representing another in a matter of common interest, or
>
> (4) between representatives of the client or between the client and a representative of the client, or
>
> (5) between lawyers representing the client.

NMRA 11-503. The party asserting the attorney-client privilege bears the burden of demonstrating that it applies and that it has not been waived. See Pina v. Espinoza, 2001-NMCA-055, ¶ 24, 130 N.M. 661, 29 P.3d 1062, 1069 (stating that the party asserting attorney-client privilege must demonstrate the attorney-client privilege's applicability)(citing State v. Gallegos, 92 N.M. 370, 378, 588 P.2d 1045, 1053 (Ct. App.1978)); United Nuclear Corp. v. Gen. Atomic Co., 96 N.M. 155, 629 P.2d 231, 293 (1980)("The bald assertion that production of the requested information would violate a privilege (provided by law) is not enough. The party resisting discovery has the burden to clarify and explain its objections and to provide support therefor. General objections without specific support may result in waiver of the objections.")(internal quotations omitted).

## THE PHYSICIAN-PATIENT PRIVILEGE

At common law, there was no physician-patient privilege. See Whalen v. Roe, 429 U.S. 589, 602 n.28 (1977); State v. Roper, 122 N.M. 126, 128, 921 P.2d 322, 324 (Ct. App. 1996)("Common law did not recognize the physician-patient privilege.").   New Mexico, however, has created such a privilege.   Pursuant to New Mexico's physician-patient privilege,

> [a] patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purposes of diagnosis or treatment of the patient's physical, mental or emotional condition, including drug addiction, among the patient, the patient's physician or psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.

NMRA 11-504.  The privilege, however, does not apply to "communications relevant to an issue of the physical, mental or emotional condition of the patient in any proceeding in which the patient relies upon the condition as an element of the patient's claim or defense." Id.  "The purpose of the privilege is to encourage a patient to make complete disclosures of his symptoms and conditions to a physician without fear of publication."  State v. Roper, 122 N.M. at 128, 921 P.2d at 324.

## ANALYSIS

In its earlier Memorandum Opinion and Order, and at the hearing on this motion, the Court overruled Vondrak's objection to the Defendants' taking Dr. Jain's deposition.  See Memorandum Opinion and Order at 1-2; Transcript of Hearing at 8:23-25 (taken March 30, 2009)(Court)("Tr.").[1] The Court also indicated at the hearing that it did not believe that Dr. Jain's file on Vondrak and communications between Vondrak's attorneys and Dr. Jain fell within the scope of the attorney-client privilege.  See Tr. at 10:23-25 (Court).  Because Dr. Jain is not the client, and because he is

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

a potential fact witness, the attorney-client privilege does not extend to his files on Vondrak or to his communications with Vondrak's attorney.

## I.   FEDERAL PRIVILEGE LAW APPLIES TO THIS CASE.

Before determining whether a privilege applies, the Court must decide whether federal or state law governs the asserted privilege.  This case involves both federal and state-law claims, and therefore presents the possibility that either or both federal or state privilege law should govern.  At the same time, federal and New Mexico privilege law are not identical.  Based on counsel's arguments at the hearing and in briefing, this case presents two possible privileges: attorney-client privilege and physician-patient privilege.  An examination of federal case law and New Mexico law do not assure the Court that the same result would obtain under either body of law.

Given that the evidence Vondrak requests the Court to find privileged is relevant to both his federal- and state-law claims, the Court believes it is not prudent to attempt to separate the federal- and state-law claims, and to attempt to apply state privilege law to the state-law claims and federal privilege law to the federal claim.  Ultimately, where there is a federal cause of action and pendent state-law claims, and where the asserted privilege relates to evidence that is relevant both to the federal and state-law claims, the Court finds that federal privilege law should apply.

In a diversity case, state law governs the availability of the attorney-client privilege.  See Frontier Refining, Inc. v. Gorman-Rupp Co., Inc., 136 F.3d 695, 699 (10th Cir. 1998); Fed. R. Evid. 501.  Pursuant to the Federal Rules of Evidence, however, "the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience" normally govern the existence and scope of a privilege.  Fed. R. Evid. 501.  Rule 501 states:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political

subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.  However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Fed. R. Evid. 501.

This case involves both federal- and state-law claims.  The text of rule 501 suggests that, in such situations, federal privilege law should apply to federal claims and state privilege law should apply to state-law claims.  See Motley v. Marathon Oil Co., 71 F.3d at 1551 ("Motley asserted both federal and state causes of action. As to state causes of action, a federal court should look to state law in deciding privilege questions.")(citing White v. American Airlines, Inc., 915 F.2d 1414, 1424 (10th Cir.1990)).  Applying that rule, however, is unhelpful in many instances, such as in this case, where the privilege asserted goes to evidence that is relevant to both a federal and a state-law claim. The extent of Vondrak's injuries, for which he sought treatment from Dr. Jain, is at issue in both his federal- and state-law claims.

Where a privilege is asserted for evidence relevant both to federal and pendent state-law claims, most circuit courts have either held that federal privilege law governs or approved of such an approach without explicitly adopting it.  See In re Sealed Case (Medical Records), 381 F.3d 1205, 1212-13 (D.C. Cir. 2004)("'The usual solution by the courts' in such cases 'has been a preference for federal privilege law when it conflicts with state privilege law.'")(quoting 3 J. McLaughlin, Weinstein's Federal Evidence § 501.02[2][c], at 501-14 (2d ed. 2004))(footnote omitted); Virmani v. Novant Health Incorp., 259 F.3d 284, 287 n.3 (4th Cir. 2001)("We agree with our sister circuits that in a case involving both federal and state law claims, the federal law of privilege applies."); Pearson v. Miller, 211 F.3d 57, 61 (3d Cir. 2000)(concluding that, where there is a conflict between

federal and state privilege law because of the existence of federal and pendent state-law claims, the United States Court of Appeals for the Third Circuit "has resolved this potential conflict in favor of federal privilege law" because "applying two separate disclosure rules with respect to different claims tried to the same jury would be unworkable")(internal quotation marks and citations omitted); Hancock v. Dodson, 958 F.2d 1367, 1373 (6th Cir. 1992) ("The existence of pendent state law claims does not relieve [courts] of [their] obligation to apply the federal law of privilege."); Hancock v. Hobbs, 967 F.2d 462, 466 (11th Cir. 1992) ("Courts that have confronted this issue in the context of the discoverability of evidence have uniformly held that the federal law of privilege governs even where the evidence sought might be relevant to a pendent state claim."); Religious Tech. Ctr. v. Wollersheim, 971 F.2d 364, 367 n.10 (9th Cir. 1992)(applying federal privilege law applies in a case involving both federal and pendent state-law claims); von Bulow v. von Bulow, 811 F.2d 136, 141 (2d Cir. 1987) (declaring that, where the evidence sought "is relevant to both the federal and state claims," courts "consistently have held that the asserted privileges are governed by the principles of federal law"); Memorial Hosp. v. Shadur, 664 F.2d 1058, 1061 n.3 (7th Cir. 1981).

The United States Court of Appeals for the Tenth Circuit has differed from the other circuit courts to the extent that it has held that, where there are federal and state law claims, "[a]s to state causes of action, a federal court should look to state law in deciding privilege questions." Motley v. Marathon Oil Co., 71 F.3d at 1551. Nevertheless, the Tenth Circuit has not confronted the issue presented in this case, where evidence allegedly subject to a privilege is relevant to both the federal and state-law claims in the case. The Court believes, however, that the weight of circuit-court authority, combined with the practical considerations involved with running discovery and trials, indicate that the Tenth Circuit would follow the majority and find that federal privilege law applies under such circumstances.

First, at the discovery phase, any attempt to bifurcate privileges along the border between federal and state-law claims would be hollow if the allegedly privileged evidence impacted both sets of claims.  If, for example, state law privileged the evidence, but federal law did not, a court would be in the conundrum of preventing the discovery of evidence as to the state-law claims because of the state-law privileged, while simultaneously ordering the disclosure of the same evidence as non-privileged as to the federal-law claims.  Thus, one privilege needs to be applied to a discovery determination to avoid such a problem.

Second, it would be impracticable to apply two different bodies of privilege law in front of one jury.  See Hancock v. Hobbs, 967 F.2d at 467.  In this case, for example, if one privilege law dictated that Dr. Jain's files on Vondrak and communications with Vondrak's attorney were privileged, while the other body of privilege law dictated a contrary result, a court applying state law to the state claims and federal law to the federal claims would have to admit the same evidence for one set of claims and exclude the same evidence for the other claims.  The Court would then give a limiting instruction to the jury, but such a limiting instruction would be of little value, given that evidence which should have been privileged has been heard, and the privilege effectively lost.

In light of such considerations, the Court believes the best course of action is to apply one body of privilege law.  Moreover, it makes sense that the body of privilege law that the Court applies should be federal law.  Jurisdiction in this case is based on a federal question rather than on diversity.  Thus, the Court has supplemental jurisdiction over the state-law claims.  "[W]here the primary source of the court's jurisdiction is the federal claim, to which the state claim is merely pendent (supplemental), it seems appropriate that the federal evidentiary interest – whether in privilege or production – should be primary as well."  In re Sealed Case (Medical Records), 381 F.3d at 1213.

The Court also does not believe the Tenth Circuit would hold to the contrary.  Although the Tenth Circuit has stated the general rule that, where a case involves federal and state-law claims, state privilege applies to the state-law claims, the Tenth Circuit has not held that state privilege law should apply to evidence that is relevant to both federal and state-law claims.  The Tenth Circuit in Motley v. Marathon Oil Co. did not discuss whether the evidence at issue would have been relevant to the federal claim.  Nor did the Tenth Circuit suggest that any party contended that the evidence was relevant to the federal claim.  While the Court must make its best effort to follow Tenth Circuit precedent, there is no Tenth Circuit law governing the privilege question at issue on this motion. The weight of the authority and practical consideration lead the Court to believe it has adopted the proper approach.

## II.     UNDER FEDERAL PRIVILEGE LAW, DR. JAIN'S FILES ON VONDRAK AND COMMUNICATIONS WITH VONDRAK'S LAWYER ARE NOT PRIVILEGED.

The United States Court of Appeals for the Tenth Circuit has stated: "The [attorney-client] privilege protects 'confidential communications by a client to an attorney made in order to obtain legal assistance' from the attorney in his capacity as a legal advisor."  Matter of Grand Jury Subpoena Duces Tecum Issued on June 9, 1982, to Custodian of Records, 697 F.2d at 278 (quoting Fisher v. United States, 425 U.S. 391, 403 (1976)).  Furthermore, "[t]he privilege is to be construed narrowly."  Matter of Grand Jury Subpoena Duces Tecum Issued on June 9, 1982, to Custodian of Records, 697 F.2d at 278.

The files and communications that Vondrak seeks to protect do not fall within the privilege. First, the files and  communications are not between client and attorney.  Rather, there are potentially two sets of communications: (i) communications between Vondrak and Dr. Jain, as reflected in Dr. Jain's file on Vondrak; and (ii) communications between Vondrak's attorneys and

-10-

Dr. Jain.  Dr. Jain is a fact witness, and he is a third party.  The information and communications the Defendants seek therefore fall outside the basic definition of the attorney-client privilege.

At the hearing, Vondrak made an argument couched in agency principles – namely, that, as Vondrak's agent, Vondrak's attorney communicated with Dr. Jain.  See Tr. at 6:16-17 (Byrnes). Even if the Court accepted that there was an agency relationship, the effect of that relationship would be that the communications must be treated as occurring between Vondrak and Dr. Jain, through Vondrak's attorney.  Cast in those terms, the asserted privilege appears to be a physician-patient privilege.  Given the Court's conclusion that federal law governs the existence and scope of a privilege in this case, the existence of a physician-patient privilege is a question of federal law. Specifically, as rule 501 states, " principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience" govern the existence of such a privilege.  Fed. R. Evid. 501.  "The physician-patient evidentiary privilege is unknown to the common law. In States where it exists by legislative enactment, it is subject to many exceptions and to waiver for many reasons." Whalen v. Roe, 429 U.S. at 602 n.28.  Although the Court is not aware of any Tenth Circuit cases discussing the existence of a physician-patient privilege in federal question cases, other circuits have recognized that there is no such privilege.  See Northwestern Memorial Hosp. v. Ashcroft, 362 F.3d 923, 926 (7th Cir. 2004)("[T]he evidentiary privileges that are applicable to federal-question suits are given not by state law but by federal law . . . which does not recognize a physician-patient (or hospital-patient) privilege."); Gilbreath v. Guadalupe Hosp. Found., Inc., 5 F.3d 785, 791 (5th Cir. 1993)("[T]here is no physician-patient privilege under federal law."); Hancock v. Dodson, 958 F.2d 1367, 1373 (6th Cir. 1992)( "[F]ederal courts do not recognize a federal physician-patient privilege."); Becker v. Securitas Sec. Services USA, 2007 WL 677711 *2 (D. Kan.)("It is well settled that there is no federal common law physician-patient privilege.

-11-

There is also no basis for the privilege under any federal statutory law.")(footnote omitted).  Thus, if Vondrak is trying to claim an physician-patient privilege, there is no such privilege under federal privilege law.

It is possible that Vondrak's attorney mischaracterized his agency argument and that he meant to contend that Vondrak, as the client, was communicating through Dr. Jain as an agent to his attorney.  While such a theory is not without merit, the Court does not believe the agency theory applies to this case.

The Court is aware of case law in which a defendant was precluded from obtaining  the testimony of a neurologist whom the plaintiff consulted in preparation for her case.  See Webb v. Francis J. Lewald Coal Co., 214 Cal. 182, 183-84, 4 P.2d 532, 533-34 (1931), overruled on other grounds by City & County of San Francisco v. Superior Court In and For City and County of San Francisco, 37 Cal.2d 227, 232-33, 231 P.2d 26, 28-29 (1951).  In Webb v. Francis J. Lewald Coal Co., a plaintiff seeking to prove emotional distress damages consulted the neurologist to assist her attorney in preparing her case.  See id. at 184, 4 P.2d at 533.  Under those circumstances, the Supreme Court of California held that the attorney-client privilege protected the communications between the plaintiff and the neurologist she consulted.  See id. at 186, 4 P.2d at 534.  In reaching its holding, the Supreme Court of California reasoned:

> [I]t appears that respondent caused herself to be examined and a report made for the purpose of aiding her counsel in the presentation of her cause. In other words, "communications between an attorney and the agent of his client are also entitled to the same protection from disclosure as those passing directly between the attorney and his client." 28 R. C. L., § 161, p. 571.

 Webb v. Francis J. Lewald Coal Co., 214 Cal. at 184-85, 4 P.2d at 533.

Similarly, in City & County of San Francisco v. Superior Court In and For City and County of San Francisco, the Supreme Court of California applied the attorney-client privilege where a tort

plaintiff, upon his attorney's instruction, consulted a physician as part of the preparation for his case, and where the physician communicated the results of the examination to the attorney. <u>See</u> 37 Cal.2d at 235-38, 231 P.2d at 30-32. The Supreme Court of California couched its holding in agency principles, similar to the analysis applied in <u>Webb v. Francis J. Lewald Coal Co.</u> <u>See</u> <u>City & County of San Francisco v. Superior Court In and For City and County of San Francisco</u>, 37 Cal.2d at 237, 231 P.2d at 31. Specifically, the Supreme Court of California noted:

> [W]hen communication by a client to his attorney regarding his physical or mental condition requires the assistance of a physician to interpret the client's condition to the attorney, the client may submit to an examination by the physician without fear that the latter will be compelled to reveal the information disclosed.

<u>Id.</u> at 237, 231 P.2d at 31.

The Court believes these cases are inapplicable to the present situation. The Court declines to extend the attorney-client privilege to Dr. Jain's files on Vondrak. Dr. Jain's files are not communications being relayed from the treating physician to Vondrak's attorney on Vondrak's behalf. Those files are based on Dr. Jain's observations and treatment of Vondrak. At the hearing, Vondrak conceded that Dr. Jain is a potential fact witness. <u>See</u> Tr. at 6:1-3 (Byrnes)("I meant to say he's not an expert witness. He's a treating doctor."). As a treating physician and as a possible fact witness, the Defendants are entitled to see Dr. Jain's files on Vondrak. Thus, even if the Court recognized the agency relationship discussed in the California cases as giving rise to a privilege, Jain's files would not fall under that privilege.

The Court also declines to extend attorney-client privilege to communications between an attorney and the attorney's client's treating physician. The applicable attorney-client privilege in this case, which federal law governs, has not been held to encompass communications between a plaintiff's treating physician and the plaintiff's attorney. The Tenth Circuit has instructed: "The

-13-

privilege is to be construed narrowly." Matter of Grand Jury Subpoena Duces Tecum Issued on June 9, 1982, to Custodian of Records, 697 F.2d at 278.  Given the Tenth Circuit's admonishment to interpret the privilege narrowly, the Court will not invent an expansion of the attorney-client privilege that the Tenth Circuit has not previously recognized. The Court is reluctant to apply the attorney-client privilege to communications with non-clients who are witnesses or to counsel's communications with a fact witness.

The Court sees other sound reason to decline to follow the California cases in the context of this case.  One commentator, specifically discussing Webb v. Francis J. Lewald Coal Co. and City & County of San Francisco v. Superior Court In and For City and County of San Francisco, noted a large hole in those cases' rationale:

> The court failed to discuss the fact that the doctor's observations and conclusions, apart from the client's communications to him, constituted knowledge on the part of the doctor which would be highly material to the case. Thus, in transmitting the "client's communication" the doctor became far more than a mere interpreter, for he added an important increment of knowledge of his own. It seems that this knowledge should be treated just like the knowledge of any other witness and should be discoverable from the doctor himself.

Jack H. Friedenthal, Discovery and Use of an Adverse Party's Expert Information, 14 STAN. L. REV. 455, 463-64 (1962).

The common law recognized that, in some circumstances, the attorney-client privilege extended to communications from a client via an agent.  See 24 C. Wright & K. Graham, Jr., Federal Practice and Procedure § 5483, at 280 (1980).  The policy behind allowing a client to communicate with an attorney through an agent was that such an extension "added little to the cost of the privilege in terms of lost evidence and was more efficient than a contrary rule." Id.  Nevertheless:

> [T]he common law did not suppose that one could cast the privilege over communications from a witness to the attorney by the simple expedient of appointing the witness as the agent of the client.  But some courts lost sight of this goal when

the agent was an employee of the client by failing to distinguish between "communicating agents" (those who transmitted information from the client) and "source agents" (those who were simply communicating their own personal knowledge on behalf of the client). The policy of the privilege does not justify its extension to "source agents."

Id. at 281 (footnotes omitted). In this case, Dr. Jain is a potential fact witness who has personal knowledge, based on having treated Vondrak. Thus, Dr. Jain's files and communications are not the product of Dr. Jain's role as a mere intermediary, relaying information for Vondrak to Vondrak's attorney. Dr. Jain is a source agent, and the policies of the attorney-client privilege would be disserved by allowing the privilege to shield communications between him and Vondrak's attorney. The Court therefore declines to extend the privilege to such communications.

The Court concludes that the information that the Defendants seek, and which Vondrak seeks to withhold, is not covered by the attorney-client privilege. Thus, consistent with its oral ruling, Vondrak must produce the file that Dr. Jain kept on Vondrak and the communications between Vondrak's attorneys and Dr. Jain.

**IT IS ORDERED** that Plaintiff John Vondrak's Motion to Quash Subpoena is denied.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Barry J. Byrnes
Las Cruces, New Mexico

     *Attorney for the Plaintiff*

Harry S. Connelly, Jr.
  Deputy City Attorney for the
    City of Las Cruces
Las Cruces, New Mexico

-15-

-- and --

William L. Lutz
David P. Lutz
Martin, Lutz, Roggow, Hosford & Eubanks, P.C.
Las Cruces, New Mexico

  *Attorneys for Defendants City of Las Cruces, Cindy McCants,*
    *and Nathan Krause*