# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOHN VONDRAK,

        Plaintiff,

vs.                                                                    No. CIV 05-0172 JB/LAM

CITY OF LAS CRUCES, POLICE OFFICER,
CINDY McCANTS and NATHAN KRAUSE
Individuals and employees of the Las Cruces Police
Department, and CITY OF LAS CRUCES,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Defendants' Motion in Limine Regarding Defendant McCants' Resignation of Employment, filed July 15, 2009 (Doc. 182); and (ii) Plaintiff's Response to Defendants' Motion in Limine Filed With Respect to Defendants McCants Termination Cross Motion to Compel All Complaints Filed Against Officer McCants and the Basis for the Charge of Conduct Unbecoming an Officer, filed July 20, 2009 (Doc. 187). The Court held a hearing on August 11, 2009. The primary issues are: (i) whether the Court should exclude evidence regarding Defendant Officer Cindy McCants' resignation from the Las Cruces Police Department and the reasons for that resignation; and (ii) whether the Court should permit Plaintiff John Vondrak to seek discovery of complaints filed against McCants' for conduct unbecoming an officer. Because Vondrak has not articulated a legitimate non-character-based use for the evidence regarding McCants' resignation, the Court will exclude such evidence. Moreover, given that Vondrak delayed several months beyond the deadline for discovery before asking for discovery on reports of conduct unbecoming an officer, and because trial is only a few weeks away,

the Court will not allow the requested discovery at this time.

## FACTUAL BACKGROUND

The facts leading up to this lawsuit are largely set forth elsewhere. See Vondrak v. City of Las Cruces, 535 F.3d 1198, 1200-03 (10th Cir. 2008); Memorandum Opinion and Order, entered May 14, 2007 (Doc. 80)("MOO"). As relevant to the issues in these motions, McCants was the officer who Vondrak alleges initiated the field-sobriety tests to which he was subjected, and who arrested and handcuffed him after he had, in McCants' view, failed those tests.

On September 12, 2008, McCants resigned from her position as an officer with the Las Cruces City Police Department, and her resignation became effective on September 15, 2008. See Letter from Cindy McCants to Chief Harry Romero at 1, dated September 12, 2008 (Doc. 182-6)("Resignation Letter"). McCants' resignation was the culmination of a Professional Standards Unit Investigation against her, begun because she had begun dating an individual with an extensive criminal background without authorization to do so. In early September, she received a notice of intent to terminate her employment. See Notice of Intent to Terminate, Demote, or Suspend at 1, dated September 4, 2008 (Doc. 182-3). The reasons stated for her termination were "Consorting Prohibited" and "Conduct Unbecoming a Departmental Employee." Id.

The City of Las Cruces held a hearing for McCants on September 10, 2008, and, after that hearing, the chief of police recommended that the City of Las Cruces follow through with the termination. See Memorandum from Chief Harry Romero to Terrence Moore at 1, dated September 12, 2008 (Doc. 182-5). In lieu of termination, McCants decided to resign. See Resignation Letter at 1. She tendered her resignation on September 12, 2008 – the same day that the chief recommended her termination. See id.

## PROCEDURAL BACKGROUND

This case is one of the oldest on the Court's docket.  Vondrak filed his original Complaint on February 16, 2005.  See Complaint, filed February 16, 2005 (Doc. 1).  Shortly thereafter, the Court issued an initial scheduling order.  See Initial Scheduling Order at 1-2, entered March 30, 2005 (Doc. 11).  The Court held the initial scheduling conference on April 22, 2005.  At the initial scheduling conference, the Court restricted discovery to issues relevant to the Defendants' qualified immunity defense.  See Transcript of Initial Scheduling Conference at 13:8-20 (taken April 22, 2005)(Court)("Tr.").[1]  The Court set a deadline of seventy-five days to complete discovery on qualified immunity.  See id. at 15:17-25 (Court).  The Court later extended the deadline for discovery to 120 days.  See Order at 1, entered July 26, 2005 (Doc. 38).  McCants' original deposition took place August 18, 2005.

The Defendants filed a motion for summary judgment contending, among other things, that they enjoyed qualified immunity on Vondrak's federal claims.  See Defendants' Motion for Summary Judgment, filed March 2, 2006 (Doc. 52).  The Court granted summary judgment in part and denied it in part, holding that McCants and the City of Las Cruces were not entitled to summary judgment with respect to Vondrak's federal illegal-arrest claims, that Defendant Nathan Krause was entitled to summary judgment on Vondrak's federal illegal-arrest claim, that McCants, Krause, and the City were not entitled to summary judgment on Vondrak's federal excessive-use-of-force claims, and that McCants, Krause, and the City were entitled to summary judgment on Vondrak's federal inadequate-medical-attention claims.  See MOO at 2.  In its MOO, the Court explained: "[B]ecause the initial stop at the checkpoint was legal and because the failure of three field-sobriety tests would

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

give an arresting officer probable cause to arrest an individual for DUI, whether Vondrak's arrest was illegal hinges on whether McCants possessed reasonable suspicion to administer field-sobriety tests to Vondrak."  MOO at 23.  In that context, the Court held that Vondrak's admission that he "had one beer three hours ago" did not, as a matter of law, give law enforcement reasonable suspicion to conduct a sobriety test.  MOO at 25.

In June 2007, the Defendants appealed the Court's ruling to the United States Court of Appeals for the Tenth Circuit, arguing that the Court erred in denying qualified immunity to McCants on the illegal-arrest claim, and on denying immunity to McCants and to Krause on the excessive-force claim.  On August 5, 2008, the Tenth Circuit reversed the Court on the issue whether McCants had reasonable suspicion to conduct field sobriety tests.  The Tenth Circuit held: "Vondrak's statement that he 'had one beer three hours ago' provided McCants with reasonable suspicion to conduct field sobriety tests, or at the very least provided her with 'arguable reasonable suspicion' entitling her to qualified immunity."  Vondrak v. City of Las Cruces, 535 F.3d at 1207. The Tenth Circuit affirmed the Court in its denial of summary judgment on the excessive-force claim.  See id. at 1208.

The Defendants filed a writ of certiorari with the Supreme Court of the United States on November 3, 2008.  The Supreme Court denied certiorari on January 21, 2009.  See City of Las Cruces, N.M. v. Vondrak, 129 S. Ct. 1003, 1003 (2009).

On January 9, 2009, the Court granted the parties' Joint Motion to Extend Discovery Deadlines and set the discovery deadline as February 27, 2009.  See Order at 1, entered January 9, 2009 (Doc. 134).  The Court also set the deadline for discovery motions for March 5, 2009 and the deadline for pre-trial motions for March 10, 2009.  See id.  After learning, however, that McCants was no longer employed with the Las Cruces Police Department, Vondrak filed a motion on March

3, 2009 seeking an additional deposition of McCants.  As a result of Vondrak's request, the Court found that Vondrak was entitled to a limited deposition of McCants to cover areas which are relevant to claims that have not been dismissed and which he did not have the opportunity to cover in the earlier deposition.  <u>See</u> Memorandum Opinion and Order at 5, entered March 26, 2009 (Doc. 171).

Pursuant to the Court's March 26 Memorandum Opinion and Order, Vondrak deposed McCants for a second time on May 13, 2009.  At the continued deposition of McCants, information came to light regarding the circumstances of McCants' resignation.  Vondrak wishes to use evidence regarding McCants' resignation and the surrounding circumstances at trial.  The Defendants wish to prevent the introduction of such evidence.  <u>See</u> Defendants' Motion at 3.  They assert that the evidence is not relevant to whether McCants employed excessive force when she put Vondrak in handcuffs in 2005.  <u>See</u> <u>id.</u>  The Defendants also contend that the evidence does not pass muster under rule 403 of the Federal Rules of Evidence because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.  <u>See</u> <u>id.</u> at 3-4.  Finally, the Defendants argue that no other basis exists to admit the evidence.

Vondrak responds that McCants will be a witness, and that she did not object at her deposition to the introduction of evidence about her termination and the reason for that termination. <u>See</u> Plaintiff's Response to Defendants [sic] Motion in Limine Filed with Respect to Defendants McCants [sic] Termination [and] Cross Motion to Compel All Complaints Filed Against Officer McCants and the Basis for the Charge of Conduct Unbecoming an Officer at 2, filed July 20, 2009 (Doc. 187)("Response").  Vondrak contends that the evidence regarding McCants' resignation is relevant under rule 402 because the Complaint essentially alleges that McCants engaged in conduct

-5-

unbecoming an officer by using excessive force in applying the handcuffs to him.  <u>See</u> Response at 3.

Vondrak also submits that the evidence is admissible under rule 404(b) because it constitutes evidence of other wrongs or acts admissible to show intent, absence of mistake, or accident.  <u>See</u> Response at 3.  Vondrak further argues that the evidence can come in under rule 404(3). Specifically, he contends that the evidence is admissible under rule 608 for credibility reasons.  <u>See</u> Response at 3.

As part of his response, Vondrak has included a cross motion through which he requests that the Court compel the production of all citizen complaints against McCants and all records pertaining to her charge of conduct unbecoming an officer.  <u>See</u> Response at 4.  He also asks the Court to hold an in-camera hearing before trial for the purpose of determining all admissibility issues raised in the Defendants' motion in limine.   Vondrak requests that the Court refrain from deciding the Defendants' motion in limine at this time.  <u>See</u> Response at 4.

In reply, the Defendants argue that evidence regarding the circumstances of McCants' resignation is irrelevant because information about a personal relationship that McCants had with an individual having a criminal history has no bearing on whether McCants handcuffed Vondrak too tightly five years earlier.  <u>See</u> Defendants' Reply in Support of Their Motion In Limine Regarding Defendant McCants' Resignation from Employment at 2, filed August 3, 2009 (Doc. 197)("Reply"). The Defendants also contend that Vondrak seeks to overgeneralize matters beyond what the Federal Rules of Evidence contemplate.  <u>See</u> <u>id.</u> at 3.  In the Defendants' view, the upcoming trial does not involve whether McCants generally engages in conduct unbecoming an officer, but rather whether she violated Vondrak's right to be free from excessive force on the night of the incident at issue in the case.  <u>See</u> <u>id.</u>

-6-

The Defendants also take issue with Vondrak's reliance on rule 404(b).  According to the Defendants, Vondrak has failed to show how evidence of McCants' relationship with an individual with a criminal history could serve to show intent, absence of mistake, or any other non-propensity purpose.  See Reply at 3.  The Defendants therefore insist that Vondrak cannot overcome the general prohibition against the admission of other-acts evidence.  See id. at 4.

The Defendants assert that the evidence of McCants' termination and surrounding circumstances is not admissible under rule 608.  See Reply at 6.  The Defendants note that rule 608(a) allows credibility attacks in the form of opinion or reputation evidence as to matters related to a witness' character for truthfulness or untruthfulness, and that rule 608(b) further limits such evidence by barring extrinsic evidence of specific instances of conduct.  See Reply at 7.  The Defendants insist that Vondrak presents no coherent argument regarding why rule 608 should apply.

In addition to their reply, the Defendants filed a response to Vondrak's cross motion.  In the reply, they argue that McCants has already produced all of the materials in her personnel file related to her termination.  See Defendants' Response to Plaintiff's Cross-Motion to Compel at 3, filed August 3, 2009 (Doc. 196)("Defendants' Response").  The Defendants assert that they "do not believe Plaintiff is being genuine when he alleges a limited understanding of the circumstances surrounding McCants' resignation."  Id.  Ultimately, in the Defendants' view, the cross motion constitutes a fishing expedition that is not calculated to obtain relevant evidence.  See id. at 4.

At the hearing, Vondrak's attorney, Barry J. Byrnes, stated that the evidence he seeks to introduce is relevant because McCants' conduct on the evening of the arrest was conduct not becoming an officer and her later actions leading to her resignation were a manifestation of the same class of conduct.  See Transcript of August 11, 2009 Hearing at 4:19-21 (taken August 11, 2009)(Byrnes)("Aug. 11 Tr.").  Byrnes represented: "I have a strong belief but no evidence to really

at this point to say otherwise.  But she didn't . . . suddenly become an improper officer.  I believe this conduct was always there."  Id. at 4:21-23 (Byrnes).

The Court asked Vondrak's attorney what non-propensity purpose he could articulate for introducing the evidence related to McCants' resignation.  Mr. Byrnes argued:

> I don't want to try the case here and limit myself, but in general I would be telling the jury that her actions were intentional in respect that when she put the handcuffs on him she intended to hurt him; when she took him to the station she deliberately refused to acknowledge his complaints to loose the handcuffs; she kept him locked handcuffed behind his back in a jail cell when there was no need to do that even after he – it was determined that he had zero alcohol in his system.  And this went beyond – this appears to tend to show that she wanted to punish him for some reason and I believe it's all relevant to the punitive damage aspect of this case and that's basically what I would be telling the jury.  And this proof is showing that this officer is not what she appears to be and we have direct and circumstantial evidence and even though it surfaced later, the fact that it surfaced later in and of itself shouldn't be enough to reject it.

Tr. at 9:23-10:17 (Byrnes).  The Court asked Vondrak's attorney why he delayed in requesting the additional discovery discussed in his cross-motion until July 20, 2009.  Vondrak's attorney admitted that, at least after the May 2009 deposition, he knew he had potentially incomplete information about McCants' resignation.  See id. at 7:16-18 (Byrnes).  He also conceded that the discovery deadline has passed.  See id. at 5:4-14 (Court & Byrnes).  In response to the Court's inquiry regarding the delay, Vondrak's attorney stated:

> Well Judge, in part medical problem – I have seizures; I had seizures in 08 [and] I was in the hospital for five days, and some of that related to that.  This is the only case.  I'm winding up a practice and the only case I have, so the – but it's not entirely that.  You know to be honest with you, there were other things going and I didn't file a motion until July.

Id. at 8:8-13 (Byrnes).

## LAW REGARDING RULE 404(b) EVIDENCE

"'Relevant evidence' means evidence having any tendency to make the existence of any fact

that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.  "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.  Rule 404(a) generally bans character evidence offered for the purpose of proving action in conformity therewith on a particular occasion. See Fed. R. Evid. 404(a).  The exceptions to this general ban are few.  In a criminal case, a court may admit

> evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same, or if evidence of a trait of character of the alleged victim of the crime is offered by an accused and admitted under Rule 404(a)(2), evidence of the same trait of character of the accused offered by the prosecution.

Fed. R. Evid. 404(a)(1).  A court may also admit evidence of a pertinent character trait of the alleged victim of the crime "offered by the accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the alleged victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor."  Fed. R. Evid. 404(a)(2).  Finally, the rules of evidence make allowances for certain character evidence of a witness through rules 607, 608, and 609.

Although the rules general prohibit the admission of character evidence, rule 404(b) provides:

> (b) **Other Crimes, Wrongs, or Acts**. -- Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Fed. R. Evid. 404(b)(bold in original). Rule 404(b) states that evidence of other crimes or wrongs may not be introduced against a person to show that, upon a later occasion, he or she acted in conformity with that prior behavior except to prove some other issue, including a number of enumerated issues. A party introducing 404(b) evidence must show that: (i) the evidence is introduced for a proper purpose; (ii) the evidence is relevant; (iii) the evidence has probative value that is not substantially outweighed by the potential for unfair prejudice; and (iv) the party introducing the evidence must precisely articulate the purpose for which the evidence is offered. See United States v. Hardwell, 80 F.3d 1471, 1488 (10th Cir. 1996)(citing Huddleston v. United States, 485 U.S. 681, 691-92 (1988)).

## LAW REGARDING RULE 608(b) EVIDENCE

Rule 608 provides certain mechanisms for attacking witnesses' character for truthfulness or untruthfulness. Rule 608(a) states:

> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

Fed. R. Evid. 608(a). "Under Federal Rule of Evidence 608(b), specific unrelated instances of a witness's prior misconduct may be used to impeach the witness at the discretion of the court, however, only to the extent the misconduct reflects on the witness's character for truthfulness." United States v. Beltran-Garcia, 2009 WL 2231667, at *6 (10th Cir. 2009). Rule 608(b) lays out the mechanics of using evidence of specific instances of conduct for impeachment purposes:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness'

-10-

> character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Fed. R. Evid. 608(b). "Though Rule 608 does not explicitly specify how the trial court should exercise its discretion, the discretion must be exercised within the ambit of the other rules of evidence, including Rules 401, 402, and 403, which address the relevance and probative value of possible evidence." United States v. Beltran-Garcia, 2009 WL 2231667, at *6.

## ANALYSIS

While the Defendants seek to exclude the evidence surrounding McCants' resignation as irrelevant and unfairly prejudicial, Vondrak offers several justifications for admitting the evidence, including as 404(b) evidence to prove intent, or as rule 608 character evidence. The Court believes that the Defendants have the better argument and will accordingly exclude the evidence because it is of marginal relevance, at best, to the issues at trial, and appears to be proffered largely as character evidence to show that McCants was acting in conformity with a character trait – a propensity to act in a manner not becoming an officer. The Court also finds that the time is long passed for the additional discovery that Vondrak seeks, and Vondrak has offered no good reason for the Court to allow more discovery approximately three weeks before trial. The Court will therefore grant the Defendants' motion and will deny Vondrak's cross motion.

## I.   THE COURT WILL NOT ADMIT THE EVIDENCE OF MCCANTS' RESIGNATION AND OF HER RELATIONSHIP WITH AN INDIVIDUAL WITH A CRIMINAL HISTORY.

The Court finds that the evidence about the circumstances surrounding McCants' resignation is not relevant to any material issue in this case. The Court also finds Vondrak's 404(b) justification unpersuasive because Vondrak has not articulated a legitimate non-propensity use of the evidence. Vondrak has also not presented a coherent reason why rule 608 would serve as a vehicle for

admitting the evidence.

**A.   THE EVIDENCE REGARDING MCCANTS' RESIGNATION IS NOT RELEVANT TO ANY ISSUES AT TRIAL.**

The threshold requirement for evidence's admission is that the evidence be relevant.  The Federal Rules of Evidence define relevance.  Under the rules, "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.   "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

The primary issue at trial will be whether McCants violated Vondrak's constitutional right to be free from the use of excessive force.  The surviving claims stem from the allegation that, in August 2003,  McCants applied handcuffs in an excessively tight manner and that she left them on Vondrak for an excessive amount of time.  McCants' accusations of conduct unbecoming an officer and her resignation came in September 2008 – more than five years after the incident at issue in this lawsuit.  Vondrak has a steep hill to climb in his effort to show that a series of events so unrelated to the conduct at issue at trial, which occurred a half decade later, have any tendency to make issues related to the handcuffing event more or less true.  Vondrak has not been able to climb that hill.

From what the Court can make out, Vondrak wants to show that McCants had a tendency to act in a manner not becoming an officer – on one occasion by applying handcuffs too tight and mistreating Vondrak, and on another occasion by dating a known criminal against Las Cruces Police Department policy and without approval of her superiors.  Such a rationale presents character

evidence offered for the purpose of proving action in conformity therewith on a particular occasion, which the rules generally preclude.  The Court has heard no other valid justification for why the evidence is relevant, though Vondrak has contended that the Court can admit it under rule 404(b) or under rule 608.  Neither contention is persuasive.

**B.**      **VONDRAK HAS NOT ARTICULATED A PROPER PURPOSE UNDER 404(b) FOR ADMITTING THE EVIDENCE.**

A party introducing 404(b) evidence must show that: (i) the evidence is introduced for a proper purpose; (ii) the evidence is relevant; (iii) the evidence has probative value that is not substantially outweighed by the potential for unfair prejudice; and (iv) the party introducing the evidence must precisely articulate the purpose for which the evidence is offered.  See United States v. Hardwell, 80 F.3d 1471, 1488 (10th Cir. 1996)(citing Huddleston v. United States, 485 U.S. 681, 691-92 (1988).  Vondrak, who is introducing the evidence in this case, has not precisely articulated a proper purpose.  The evidence therefore is not admissible under 404(b).

At the hearing, the Court asked Vondrak to articulate his non-propensity purpose for proffering the evidence under rule 404(b).  In response, he stated: "And this proof is showing that this officer is not what she appears to be and we have direct and circumstantial evidence and even though it surfaced later, the fact that it surfaced later in and of itself shouldn't be enough to reject it."  Tr. at 10:1-10:17 (Byrnes).  Again, what Vondrak is arguing is a character trait – that McCants was a bad officer, as shown by her conduct unbecoming an officer, and that she acted in conformity with that character trait when she applied the handcuffs to him.

Vondrak also argued at the hearing that this evidence will tend to show intent: "And this went beyond – this appears to tend to show that she wanted to punish him for some reason and I believe it's all relevant to the punitive damage aspect of this case and that's basically what I would

be telling the jury." Tr. 10:11-13 (Byrnes). The Court does not see a cogent argument how McCants' improper relationship with an individual with criminal history, and her resignation because of that relationship, show that McCants wanted to punish Vondrak five years earlier, when she encountered him at a DWI checkpoint. The contention lacks force and does not support the evidence's admissibility.

Vondrak cites one case in support of his argument that the evidence should come in: United States v. Zapata, 871 F.2d 616 (7th Cir. 1989). That out-of-circuit case, however, is inapposite. In United States v. Zapata, the United States Court of Appeals for the Seventh Circuit reviewed a trial court's admission, in a criminal case, of an uncharged drug transaction to support the defendant's conviction. See id. at 621. The Seventh Circuit found that the evidence was properly admitted because it showed the defendant's "access to large quantities of cocaine, his ability to acquire distant customers, and the similarity between the modus operandi of temporally close transactions." Id. The Seventh Circuit also found that the evidence went "to refute [the defendant's] theory of defense, which, according to his counsel, was that he had nothing whatsoever to do with any cocaine transactions." Id.

In other words, in United States v. Zapata, the United States was dealing with the proffer of an uncharged act that was similar to and temporally close to the charged act. There is a large temporal gap between the occurrences leading up to McCants' termination and the events at issue in this case. Moreover, there is no close similarity between an event involving putting handcuffs too tightly on a suspect and dating an individual who has a criminal history. United States v. Zapata also noted several non-propensity purposes that the proponent of the evidence had proffered, including access to drugs, ability to acquire distant customers, and similarity in modus operandi. See 871 F.2d at 621-22. Unlike the proponent of the evidence in United States v. Zapata, Vondrak

-14-

has not articulated any non-propensity uses of the evidence.

Even if there were an arguable non-propensity purpose, the Court believes the evidence fails 403 balancing because it would be unfairly prejudicial to McCants. Moreover, there is a high risk of confusing the issues, given that the evidence would introduce a discussion whether McCants, as a general matter, tends to act in a manner not becoming an officer. Her conduct on a specific evening, and not her general character as an officer, is what is at issue in the trial. The evidence about her resignation and the circumstances leading up to it are therefore not admissible under 404(b).

### C.   RULE 608 DOES NOT APPLY TO THIS EVIDENCE.

Vondrak asserts that the evidence regarding McCants' resignation and the surrounding circumstances should come in under rule 608 for credibility. Rule 608, however, does not support the admission of this evidence. Rule 608(a) states:

> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

Fed. R. Evid. 608(a). Additionally, "[u]nder Federal Rule of Evidence 608(b), specific unrelated instances of a witness's prior misconduct may be used to impeach the witness at the discretion of the court, however, only to the extent the misconduct reflects on the witness's character for truthfulness." United States v. Beltran-Garcia, 2009 WL 2231667, at *6. Rule 608(b) lays out the mechanics of using evidence of specific instances of conduct for impeachment purposes:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness'

character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Fed. R. Evid. 608(b).  Neither 608(a) nor 608(b) apply here.

Vondrak has not attempted to argue that the proffered evidence would constitute opinion or reputation testimony going to McCants' character for truthfulness.  Vondrak wants to introduce evidence of specific instances of conduct – a proffer that rule 608(b) governs.  Rule 608(b), however, does not allow extrinsic proof of specific acts, but rather permits the Court to allow inquiry, on cross examination of the witness, into specific acts probative of truthfulness or untruthfulness.  Even if Vondrak wished to inquire about McCants' resignation through cross examination as a means of showing a character for untruthfulness, the Court does not believe the events are probative of her character for untruthfulness.  Perhaps they are probative of bad judgment or insubordination, but the link between the conduct and McCants' character for truthfulness or untruthfulness is tenuous.

Accordingly, the Court believes it would be improper to admit the evidence of McCants' resignation.  The evidence is not relevant, except, perhaps, to show character, in conformity with which McCants may have acted.  Vondrak has not articulated another valid purpose to make the evidence admissible under rule 404(b).  Furthermore, rule 608 does not support the admission of the evidence.  Accordingly, the Court will grant the Defendants' motion in limine and will exclude the evidence regarding McCants' resignation and the surrounding circumstances.

## II.     THE COURT WILL NOT ALLOW VONDRAK TO HAVE MORE DISCOVERY AT THIS LATE STAGE IN THE CASE.

Aside from opposing the Defendants' motion in limine, Vondrak also filed a cross motion for more discovery.  He styles this motion a "nationally recognized Pitchess motion" and, through

it, requests that the Court compel the production of all records of citizen complaints against McCants, and all records pertaining to the charge of conduct unbecoming an officer.  Regardless how well recognized the Pitchess motion is, the Court finds that, under the Federal Rules of Civil Procedure, Vondrak's motion – which the Court construes as a motion to compel – is untimely. Moreover, Vondrak offers no good cause for allowing the extra discovery outside the discovery period.

At the hearing, Vondrak conceded that the deadline for discovery motions had passed.  See Tr. at 7:23-24 (Byrnes)("I'm past the deadline judge yeah I am there's no doubt about it.").  He also stated that he knew, at least by the time of the second McCants deposition, that the information he had regarding McCants' resignation was potentially incomplete.  See id. at 8:2-5 (Court & Byrnes). Thus, while Vondrak knew, probably by February, but at least by May, that he wanted this discovery, he waited until July 20 to request it, and even via a cross-motion.

In Smith v. United States, 843 F.2d 166 (10th Cir. 1987), the Tenth Circuit discussed the factors to be considered in determining whether to reopen discovery.  These factors include:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

Id. at 169 (citing Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1213 (3d Cir. 1984); Wilk v. American Medical Association, 719 F.2d 207, 232 (7th Cir. 1983), cert. denied, 467 U.S. 1210 (1984); Geremia v. First National Bank of Boston, 653 F.2d 1, 5-6 (1st Cir. 1981)).  All of the factors that the Tenth Circuit set forth in Smith v. United States cut against Vondrak's request for more discovery.  First, trial is imminent.  By the time he requested the discovery, on July 20, 2009,

trial was approximately one month away.  The Defendants filed their response to the motion on

August 3, 2009, and the Court held a hearing on August 10, 2009.  Thus, even without the benefit

of a reply, by the time the Court was in a position to decide Vondrak's motion, trial was less than

a month away.

Second, the request is opposed and the Court believes the Defendants would be prejudiced

if, at this stage, the Defendants were required to produce more documents and engage in discovery

on the eve of trial.  This would be particularly unfair, given that the Defendants already agreed to

extend the discovery deadlines once before because of Mr. Byrnes' unforeseen medical conditions.

Moreover, there is no indication that Vondrak was diligent in seeking to obtain the discovery within

the deadlines, or at least soon after the May 2009 deposition.  When the Court asked Mr. Byrnes,

at the hearing, why he had not acted sooner to obtain the discovery, he stated:

> Well Judge, in part medical problem – I have seizures; I had seizures in 08 [and] I
> was in the hospital for five days, and some of that related to that.  This is the only
> case.  I'm winding up a practice and the only case I have, so the – but it's not entirely
> that.  You know to be honest with you, there were other things going and I didn't file
> a motion until July.

Tr. at 8:8-13 (Byrnes).  This explanation is not adequate to convince the Court that there is a good

cause to allow the discovery.  Rather, it suggests a lack of diligence on the part of Vondrak's

attorney.  Mr. Byrnes has only one case, and yet he did not immediately seek the discovery after

learning of McCants' resignation, but instead waited until July 20 – nearly two months after

McCants' second deposition. He cannot – and does not – suggest that a busy litigation practice and

the press of other cases hindered him from filing the motion.  Having other things going on is not,

on its own, good cause for delaying in seeking discovery until well after the deadlines or after

finding out that the discovery might be necessary.

The final factor also weighs against Vondrak.  It is not clear, at this point, that the discovery

-18-

will lead to relevant evidence, given that the Court is excluding evidence surrounding McCants'
resignation and her relationship with an individual with a criminal history.  It is true that, there might
be a possibility that the reference to conduct not becoming an officer in the documents regarding
McCants' resignation relate to something other than her improper relationship, and that such
evidence is relevant.  For that reason, the Court might well have been inclined to permit the
discovery, if the request had been timely or diligently pursued.  The Court does not believe,
however, that the likelihood of relevant evidence being uncovered is sufficient to allow out-of-time
discovery less than one month before trial.  Notably, Vondrak did not request the discovery in a
separate motion.  Rather, he asked for it by way of a cross-motion in his response to the Defendants'
motion in limine. There is no indication that he was going to file his motion to compel before the
Defendants requested that information related to McCants' resignation be excluded.  This approach
undercuts any contention that the discovery Vondrak seeks will reveal crucial, vital information.
The Court will therefore not compel the production that Vondrak seeks.

Regarding Vondrak's reference to Pitchess v. Superior Court, 11 Cal. 3d 531 (Cal. 1974),
the Court finds no sound reason why that case applies here or why it supports the contention the
Vondrak is entitled to new discovery.  In Pitchess v. Superior Court, which has been abrogated in
California by statute, the Supreme Court of California held that a criminal defendant was entitled
to discovery of police personnel records as part of his fundamental right to a fair trial.  See 11 Cal.
3d. at 534.  In reaching its conclusion, the Supreme Court of California reasoned: "[I]t has long been
held that civil discovery procedure has no relevance to criminal prosecutions."  Id. at 536.

The Supreme Court of California in City of San Jose v. Superior Court, 850 P.2d 621, 622
(Cal. 1993), explained:

In 1978 the California Legislature codified the privileges and procedures surrounding

what had come to be known as "Pitchess motions" (after our decision in Pitchess v. Superior Court . . .) through the enactment of Penal Code sections 832.7 and 832.8 and Evidence Code sections 1043 through 1045. (Stats.1978, ch. 630, p. 2081; see City of Santa Cruz v. Municipal Court (1989) 49 Cal.3d 74, 81, 260 Cal.Rptr. 520, 776 P.2d 222.) In Pitchess we held that a criminal defendant's fundamental right to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information entitled a defendant, who was asserting self-defense to a charge of battery on a police officer, to discovery of police personnel records.

City of San Jose v. Superior Court, 850 P.2d at 622-23. In other word, the Pitchess motion, which Vondrak states his motion is, appears not to be applicable in civil cases. The Supreme Court of California said as much in Pitchess v. Superior Court. Nevertheless, excessive force cases are often in the nature of criminal cases, and the Supreme Court of California's basic principle – that police personnel files are often apparently discoverable in these cases involving police officers – is not lost on the Court. The Court likely would have required them if Vondrak had timely requested the material and it had not been produced. At this late date, and without much expectation of providing anything admissible, the issue is timing, not discoverability.

While "[t]he District Court has wide discretion in its regulation of pretrial matters," Si-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1514 (10th Cir. 1990), scheduling orders "may be modified only for good cause and with the judge's consent," Fed. R. Civ. P. 16(b)(4). See Street v. Curry Board of County Comm'rs, 2008 WL 2397671 at *6 (D.N.M.)(Browning, J.). The Advisory Committee Notes to rule 16 observe:

> [T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension. Since the scheduling order is entered early in the litigation, this standard seems more appropriate than a 'manifest injustice' or 'substantial hardship' test. Otherwise, a fear that extensions will not be granted may encourage counsel to request the longest possible periods for completing pleading, joinder, and discovery.

Fed. R. Civ. P. 16(b)(4), Advisory Committee Notes, 1983 Amendment. In the United States Court of Appeals for the Tenth Circuit, the concepts of good cause, excusable neglect, and diligence are

all related.  As this Court has stated:  "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts."  <u>Street v. Curry Board of County Comm'rs</u>, 2008 WL 2397671 at *6.  "The Tenth Circuit . . . has recognized the interrelation between 'excusable neglect' and 'good cause.'"  <u>Pulsecard, Inc. v. Discover Card Services Inc.</u>, 168 F.R.D. 295, 301 (D. Kan. 1996)(citing <u>Broitman v. Kirkland (In re Kirkland)</u>, 86 F.3d 172, 175 (10th Cir. 1996)).  In <u>Broitman v. Kirkland (In re Kirkland)</u>, the Tenth Circuit dealt with the definition of "good cause" in the context of rule 4(j).  The Tenth Circuit noted:

> [W]ithout attempting a rigid or all-encompassing definition of good cause, it would appear to require *at least as much* as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice, and some showing of good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified' is normally required.

86 F.3d at 175 (quoting <u>Putnam v. Morris</u>, 833 F.2d 903, 905 (10th Cir.1987))(emphasis in <u>Putnam v. Morris</u> and <u>Broitman v. Kirkland (In re Kirkland)</u>)(internal quotation marks omitted).  The Tenth Circuit explained that <u>Putnam v. Morris</u> "thus recognized that the two standards, although interrelated, are not identical and that 'good cause' requires a greater showing than 'excusable neglect.'"  <u>Broitman v. Kirkland (In re Kirkland)</u>, 86 F.3d at 175.

Other courts within the Tenth Circuit have held that "the 'good cause' standard primarily considers the diligence of the party . . . [.]  The party seeking an extension must show that despite due diligence it could not have reasonably met the scheduled deadlines.  Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."  <u>Pulsecard, Inc. v. Discover Card Services Inc.</u>, 168 F.R.D. at 301 (internal quotation marks omitted)(omission in original).  In the United States District Court for the District of Utah, the Honorable Dale A. Kimball, United States District Judge, found "good cause" existed to amend the court's scheduling

order when the court decided to permit the plaintiff's counsel to withdraw as counsel.  See Kee v. Fifth Third Bank, 2008 WL 183384, *1 (D. Utah).  Judge Kane reasoned: "[I]n light of the court's decision to permit [counsel] to withdraw . . . the court has determined that good cause exists for amending the existing scheduling order."  Id.

The Court held a scheduling conference on September 26, 2008 during which it set deadlines for discovery.  See Clerk's Minutes for Proceedings Held Before District Judge James O. Browning: Status Conference, filed September 26, 2008 (Doc. 120).  On January 9, 2009, the Court entered its order granting the parties' joint motion to extend discovery deadlines.  See Order at 1-2, entered January 9, 2009 (Doc. 134).  Although the Court's January 9, 2009 order extended discovery deadlines, the September 26, 2008 Minute Order otherwise remained in effect.  Vondrak now seeks to extend the deadlines the Court set, and to do so, he must show good cause.  The Court concludes that he has failed to make such a showing.

As the Tenth Circuit has stated, "[p]roperly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts."  Street v. Curry Board of County Comm'rs, 2008 WL 2397671 at *6.  The Court does not see indications that Vondrak or his attorney made a diligent effort to seek this discovery within the deadline, or as soon as practicable after the May deposition of McCants.

The reasons Vondrak offers for not acting more quickly do not convince the Court that, despite his best efforts, he was unable to meet the deadlines the Court has set.  Vondrak's attorney offered the explanation that this case is his only one and that he had other things going on. Ultimately, he admitted at the hearing: "You know to be honest with you, there were other things going and I didn't file a motion until July."  Tr. at 8:8-13 (Byrnes).  The Court believes that, if anything, having only one case suggests that Vondrak's attorney would have fewer obstacles to

-22-

complying with the discovery deadlines, given that he is not juggling various cases. Moreover, the vague mention of "other things going on" is not, on its own, sufficient to show good cause. "Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." Pulsecard, Inc. v. Discover Card Services Inc., 168 F.R.D. at 301 (internal quotation marks omitted)(omission in original).

In sum, the Court will grant the Defendants' motion in limine. Accordingly, Vondrak may not introduce evidence regarding McCants' resignation or about the circumstances that led to her resignation.[2]   The Court will deny Vondrak's cross motion in limine because it is untimely. Vondrak has not demonstrated good cause for the Court to permit the out-of-time discovery.

**IT IS ORDERED** that the Defendants' Motion in Limine Regarding Defendant McCants' Resignation of Employment is granted, and the Plaintiff's Cross Motion, which is set forth in Plaintiff's Response to Defendants' Motion in Limine Filed With Respect to Defendants McCants Termination Cross Motion to Compel All Complaints Filed Against Officer McCants and the Basis for the Charge of Conduct Unbecoming an Officer, is denied.

---

[2] Vondrak asks the Court to refrain from deciding the defendants' motion in limine until it could conduct an "in camera review." It is not clear what he means by in camera review or what he wants reviewed in camera. He requests that the Court "hold an in camera hearing prior to the trial for the purpose of determining all admissibility issues raised by Defendants [sic] motion in limine and not decide the defendants [sic] motion at this particular time." Response at 5. If Vondrak means a hearing outside the presence of the jury, the hearing the Court had on the motion in limine should suffice. If, however, Vondrak wishes to use an in camera hearing to review the discovery he is requesting but does not yet have, the Court sees no need for such a procedure, given that the Court is denying his request for additional discovery as untimely. At this point, discovery is over and the parties are preparing for trial, which is only a few weeks away. In any case, the Court does not see a good reason to delay deciding the defendants' motion in limine. Trial is fast approaching and the parties deserve to have their motions ruled on as they prepare.

_____
UNITED STATES DISTRICT JUDGE


_Counsel:_

Barry J. Byrnes
Las Cruces, New Mexico

      _Attorney for the Plaintiff_

Harry S. Connelly, Jr.
  Deputy City Attorney for the
   City of Las Cruces
Las Cruces, New Mexico

-- and --

William L. Lutz
David P. Lutz
Martin, Lutz, Roggow, Hosford & Eubanks, P.C.
Las Cruces, New Mexico

      _Attorneys for the Defendants_