IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN VONDRAK,

      Plaintiff,

vs.                                                                                              No. CIV 05-0172 JB/LAM

CITY OF LAS CRUCES, POLICE OFFICER,
CINDY McCANTS and NATHAN KRAUSE
Individuals and employees of the Las Cruces Police
Department, and CITY OF LAS CRUCES,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendants' Partial Motion in Limine to Exclude Testimony of Dr. Pawain Jain and Dr. Wayne Lindsey, filed August 14, 2009 (Doc. 210). The Court held hearings on August 21, 2009 and on August 24, 2009.  The primary issues are: (i) whether the Court should exclude opinion testimony by Dr. Pawain Jain that Plaintiff John Vondrak's left radial nerve was damaged by the handcuffs that Defendant Cindy McCants applied because the methodology supporting that conclusion is not reliable under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); and (ii) whether the Court should prevent Dr. Jain and Dr. Wayne C. Lindsey from testifying about causation, prognosis, and permanency because neither doctor complied with the expert disclosure requirements of rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.  Because Dr. Jain has a reliable methodology supporting his conclusion about what caused the left radial nerve injury, the Court will permit him to testify that, to a reasonable degree of medical certainty, the handcuffing caused that injury.  Moreover, the Court will not require Drs. Jain and Lindsey to disclose pretrial witness qualifications, the lists of other cases in which they

have testified, and their compensation for their study and testimony in this case because the Defendants' motion, which is really a discovery motion, is not timely. At the same time, the Court requests, without requiring, that Drs. Jain and Lindsey provide that information. If they do not provide it, the Court will allow the Defendants to inquire about those areas on cross examination, and the Court will require Drs. Jain and Lindsey to answer questions related to those issues.

## FACTUAL BACKGROUND

The facts leading up to this lawsuit are largely set forth elsewhere. See Vondrak v. City of Las Cruces, 535 F.3d 1198, 1200-03 (10th Cir. 2008); Memorandum Opinion and Order at 2-7, filed May 14, 2007 (Doc. 80)("MOO"). Briefly, Vondrak has sued for civil rights violations arising from his arrest for driving under the influence, and is asserting that the handcuffs on his wrists resulted in permanent injuries. The injuries that he asserts include radial nerve injuries in both hands. He asserts that these injuries have caused, among other things, a loss of feeling in the part of his hands. Drs. Jain and Lindsey are both slated to testify at trial on Vondrak's behalf.

## PROCEDURAL BACKGROUND

This case is the oldest on the Court's docket. Vondrak filed his original Complaint on February 16, 2005. See Complaint, filed February 16, 2005 (Doc. 1). This case is set for trial on August 24, 2009. In anticipation of trial, the Defendants have brought this motion, seeking to strike portions of testimony that Drs. Jain and Lindsey propose to offer.

### 1.     Dr. Jain's Report and Proposed Testimony.

On September 22, 2005, Dr. Jain prepared a report in which he concludes that Vondrak suffered injuries to his right radial and bilateral nerves because the handcuffs that McCants applied were too tight and left on too long. See Dr. Jain's Expert Report at 2 (prepared September 22, 2005)(Doc. 210-6). He also expresses the opinion that the radial nerve damage is permanent. See

-2-

id. at 3. Dr. Jain's report does not set forth his qualifications, the list of other cases in which he has served as an expert at trial, or a statement of compensation.

Dr. Jain conducted a neurological examination consisting of a nerve conduction study on May 15, 2005. Dr. Jain states that his nerve conduction study revealed the right radial nerve injury. Dr. Jain admits, however, that the study did not show a left radial nerve injury. See Deposition of Dr. Pawain Jain at 35:17-36:22 (taken May 15, 2009)(Doc. 210-5)("Dr. Jain Depo."). In December 2008, however, Dr. Jain performed another set of nerve conduction studies in December 2008. Dr. Jain alleges that these studies showed damage to the radial nerves in both Vondrak's wrists. See Nerve Conduction and EMG Report at 1 (prepared December 20, 2008).

Defendants' counsel questioned Dr. Jain about the results of the December tests:

Q:   But your test from May 2005 found no radial injury in his left wrist?

A:   Yes.

Q:   Now, your test results from December of 2008 do find a radial nerve injury in his left wrist.

A:   Yes.

Q:   Did you discuss with him why he has a nerve injury in his left wrist that he did not have in 2005?

A:   Yeah, we did discuss. He had symptoms in 2003 in both hands.

Q:   What was his explanation for why he has a wrist injury in 2008 that he didn't have in 2005?

A:   His history suggests that he has a complaint in both hands, if you look at the note. In radial nerve distributions, this could be normal, could be abnormal, it doesn't matter. Numbness and tingling sensation, loss of sensation usually caused by nerve. It could be entrapment injury, injury called neuropathy, nerve entrapment compression. There's no other parts of the body cause those symptoms, other than the spinal chord.

Q:   So are you suggesting here today that –

> A:   So his history has been consistent with the symptoms.
>
> Q:   Is it going to be your testimony that the tests that you took in May 2005 with respect to his left radial nerve is incorrect?
>
> A:   No, we not say that. He has symptoms we couldn't find. This is not 100 percent reliable.

Dr. Jain Depo. at 35:17-36:22. According to his deposition, Dr. Jain therefore relies on Vondrak's "history," in which he complained about both hands, to reach the conclusion that, although the May 2005 test did not show it, Vondrak also had a radial nerve injury in his left wrist as a result of the handcuffing incident. See id.

### 2.     **Dr. Lindsey.**

Vondrak retained Dr. Lindsey for this litigation. See Letter From Barry Byrnes to Dr. Wayne Lindsey at 1 (dated October 31, 2005)(Doc. 210-8). Dr. Lindsey has filed two reports: one on December 14, 2005, and another on July 14, 2009. In the 2005 report, Dr. Lindsey states that Vondrak suffered superficial radial nerve palsy on the right wrist and bilateral carpal tunnel syndrome. Dr. Lindsey states that the radial nerve palsy on the right appears to be permanent. See Dr. Lindsey's Expert Report at 2 (prepared December 14, 2005)(Doc. 210-9). Dr. Lindsey's report does not include his qualifications, a list of cases in which he has testified as an expert, or his rate of compensation for testifying and preparing an opinion.

### 3.     **Motion in Limine/Daubert Motion.**

The Court set a deadline for filing motions in limine other than on Daubert issues for July 15, 2009. The Defendants filed their motion ten days in advance of trial, on August 14, 2009. In their motion, the Defendants request that the Court exclude Dr. Jain's testimony about a left radial nerve injury because that testimony would be based on an unreliable methodology. See Motion at 1. The Defendants additionally ask the Court to exclude any testimony by Drs. Jain and Lindsey

about causation, prognosis, and permanency because the doctors did not meet rule 26's disclosure requirements.  See Motion at 1.

Vondrak responds that Drs. Jain and Lindsey are being offered for expert testimony, but rather as treating physicians.  See Response to Partial Motion in Limine to Exclude Testimony of Dr. Pawain Jain and Dr. Wayne Lindsey ¶ 11-12, at 3, filed August 18, 2009 (Doc. 213).  Vondrak also insists that Dr. Jain's methodology in diagnosing a left radial nerve injury is based on a methodology that is recognized and accepted throughout the United States, and that the testimony will be relevant and reliable.  See id. ¶ 28, at 6.  Accordingly, Vondrak asserts that Dr. Jain's factual basis, data, principles, methods, and application are not sufficiently called into question to merit exclusion on Daubert grounds.  See Response at 6.

In their reply, the Defendants state that Dr. Jain has put himself in an impossible position: "He must either disavow his test results or disavow the claim of a left radial nerve."  Defendants' Reply in Support of Partial Motion In Limine to Exclude Testimony of Dr. Pawain Jain and Dr. Wayne Lindsey at 1, filed August 20, 2009 (Doc. 219).  The Defendants assert that Vondrak has failed to answer the Daubert issues squarely.  See Reply at 2.  They reiterate their position that Dr. Jain's methodology does not support a conclusion that there was a left radial nerve injury.

At the hearing, Vondrak's attorney insisted that Drs. Jain and Lindsey were not experts, but treating physicians.  He maintained that the Defendants were using "gotcha tactics" in raising their motion this late in the game, on the eve of trial.  The Defendants expressed concern about Vondrak trying to get the benefit of an appearance of neutrality in the testimony of a treating physician, while getting expert testimony without following the disclosure rules that govern expert testimony.

## THE COURT'S GATEKEEPER ROLE UNDER DAUBERT

In its role of gatekeeper, the Court must assess the reasoning and methodology underlying

an expert's opinion, and determine whether it is both scientifically valid and relevant to the facts of the case, i.e., whether it is helpful to the trier of fact. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. at 594-95; Witherspoon v. Navajo Refining Co., LP, No. CIV 03-1160 BB/LAM, 2005 WL 5988649 at *2 (D.N.M. July 18, 2005)(Black, J.)(citing Dodge v. Cotter Corp., 328 F.3d 1212, 1221 (10th Cir. 2003)).  The Supreme Court articulated a non-exclusive list of factors which weigh into a district court's first-step reliability determination, including: (i) whether the method has been tested; (ii) whether the method has been published and subject to peer review; (iii) the error rate; (iv) the existence of standards and whether the witness applied them in the present case; and (v) whether the witness' method is generally accepted as reliable in the relevant medical and scientific community.  See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 594-95.  The court is also to consider whether the witness' conclusion represents an "unfounded extrapolation" from the data; whether the witness has adequately accounted for alternative explanations for the effect at issue; whether the opinion was reached for the purposes of litigation or as the result of independent studies; or whether it unduly relies on anecdotal evidence.  See Witherspoon v. Navajo Refining Co., LP, 2005 WL 5988649 at *3 (citing Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)).  The United States Court of Appeals for the Tenth Circuit stated the applicable standard in Norris v. Baxter Healthcare Corp.:

> Rule 702 requires the district court to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable." Id. [Bitler v. A.O. Smith Corp., 391 F.3d 1114, 1120 (10th Cir. 2004)](quoting Daubert, 509 U.S. at 589, 113 S.Ct. 2786). This obligation involves a two-part inquiry. Id.  "[A] district court must [first] determine if the expert's proffered testimony . . . has 'a reliable basis in the knowledge and experience of his [or her] discipline.'" Id. (quoting Daubert, 509 U.S. at 592, 113 S.Ct. 2786).  In making this determination, the district court must decide "whether the reasoning or methodology underlying the testimony is scientifically valid. . . ." Id. (quoting Daubert, 509 U.S. at 592-93, 113 S.Ct. 2786). Second, the district court must further inquire into whether proposed testimony is sufficiently "relevant to the task at hand." Daubert, 509 U.S. at 597, 113 S.Ct. 2786.

397 F.3d at 883-84 (footnote omitted).  "The second inquiry is related to the first. Under the relevance prong of the Daubert analysis, the court must ensure that the proposed expert testimony logically advances a material aspect of the case. . . . The evidence must have a valid scientific connection to the disputed facts in the case." Norris v. Baxter Healthcare Corp., 397 F.3d at 884 n.2 (citing Daubert v. Merrell Dow Pharm., Inc., 43 F.3d 1311, 1315 (9th Cir. 1995) (on remand) and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. at 591)). If the expert's proffered testimony fails on the first prong, the court does not reach the second prong.  See Norris v. Baxter Healthcare Corp., 397 F.3d at 884.

In conducting its Daubert review, the court must focus generally on "principles and methodologies, and not on the conclusions generated." Armeanu v. Bridgestone/Firestone N. Am., Tire, LLC, No. CIV 05-0619  JB/DJS, 2006 WL 4060665 at *11 (D.N.M.)(Browning, J.)(citing Daubert v. Merrell Dow Pharm., Inc., 509 U.S. at 595). "Despite this focus on methodology, 'an expert's conclusions are not immune from scrutiny . . . and the court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." Armeanu v. Bridgestone/Firestone N. Am., Tire, LLC, 2006 WL 4060665 at * 11 (internal quotation marks and bracket omitted).  The proponent of the expert's opinion testimony bears the burden of establishing that the expert is qualified, that the methodology he or she uses to support his or her opinions is reliable, and that his or her opinion fits the facts of the case and thus will be helpful to the jury.  See Norris v. Baxter Healthcare Corp., 397 F.3d at 881.  As the Tenth Circuit noted in Hollander v. Sandoz Pharmaceuticals Corp., 289 F.3d 1193 (10th Cir. 2002):

> Because the district court has discretion to consider a variety of factors in assessing reliability under Daubert, and because, in light of that discretion, there is not an extensive body of appellate case law defining the criteria for assessing scientific reliability, we are limited to determining whether the district court's application of the Daubert manifests a clear error of judgment or exceeds the bounds of permissible

>choice in the circumstances. . . . Thus, when coupled with this deferential standard of review, Daubert's effort to safeguard the reliability of science in the courtroom may produce a counter-intuitive effect: different courts relying on the essentially the same science may reach different results.

289 F.3d at 1206. As the United States Court of Appeals for the Ninth Circuit noted in Claar v. Burlington Northern Railroad Co., 29 F.3d 499 (9th Cir. 1994):

>Coming to a firm conclusion first and then doing research to support it is the antithesis of this method. Certainly, scientists may form initial tentative hypotheses. However, scientists whose conviction about the ultimate conclusion of their research is so firm that they are willing to aver under oath that it is correct prior to performing the necessary validating tests could properly be viewed by the district court as lacking the objectivity that is the hallmark of the scientific method.

29 F.3d at 502-03.

"Once reliability is established, however, it is still within the district court's discretion to determine whether expert testimony will be helpful to the trier of fact. In making that determination, the court should consider, among other factors, the testimony's relevance, the jurors' common knowledge and experience, and whether the expert's testimony may usurp the jury's primary role as the evaluator of evidence." Ram v. N.M. Dep't of Environment, No. CIV 05-1083 JB/WPL, 2006 WL 4079623 at * 10 (citing United States v. Rodriguez-Felix, 450 F.3d 1117, 1123 (10th Cir. 2006)). "In essence, the question is 'whether [the] reasoning or methodology properly can be applied to the facts in issue.'" United States v. Rodriguez-Felix, 450 F.3d at 1123 (quoting Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. at 593)(alteration in Daubert v. Merrell Dow Pharmaceuticals, Inc.).

## **ANALYSIS**

Based on the briefing and the hearing, there are two primary disputes the Court must resolve in this motion. First, the Court must decide whether to limit Drs. Jain and Lindsey's testimony because they are proposing to offer expert testimony after having not complied with the disclosure

requirements of rule 26. Second, the Court must determine whether Dr. Jain's conclusion that Vondrak has a left radial nerve injury is inadmissible under Daubert. The Court concludes that Dr. Jain may testify whether the handcuffing incident caused Vondrak's left radial nerve injury because his opinion is based on a scientifically valid methodology. The Court believes Drs. Jain and Lindsey are going to be offering expert testimony. Nevertheless, the Court will not require them to make rule 26 disclosures of lists – pretrial – of cases in which they have testified as experts or compensation rates. The Court will, however, permit the Defendants to inquire about those areas on cross examination, and the doctors must answer the questions.

## I. THE DEFENDANTS' MOTION TO LIMIT TESTIMONY BASED ON FAULTY RULE 26 DISCLOSURES IS UNTIMELY.

The Court noted at the hearing that the Defendants' motion to limit testimony for faulty rule 26 disclosures was, in effect, a belated discovery motion. Surprisingly, Vondrak responded to the motion by asserting that the two doctors will be testifying as treating physicians and not as experts. This approach confused the issues, but at the hearing the Court expressed an inclination about the proper approach to resolving this issue. First, the Court will do what everyone else appears to have done up to this point – consider Drs. Jain and Lindsey to be expert witnesses. In every other regard except for the aspects that the Defendants raise on this motion, Vondrak complied with rule 26. All parties have treated these witnesses as expert witnesses, and there has been no suggestion, until now, that they are not being retained as experts. Dr. Jain testified at his deposition that he would be both a treating physician and expert witness. See Jain Depo. at 44:2-44:16. It does not make sense to now consider Drs. Jain and Lindsey as only treating physicians and not also as testifying experts. Doing so could entail cutting back their testimony in a way that, presumably, Vondrak does not desire.

If this is a discovery motion – and the non-<u>Daubert</u> portion of it appears to be one – it is not timely.  On the same day that the Defendants filed this motion, the Court entered an order precluding Vondrak from taking more discovery because his request was untimely and because the Court considers discovery to be over.  <u>See</u> Memorandum Opinion and Order at 1-2, entered August 14, 2009 (Doc. 209).  To be fair to both sides, the Court must take the same position at this time with the Defendants: that the period for discovery has passed.  To some degree, the Court agrees with Vondrak that, at this stage, a motion to trim back expert testimony based on faulty rule 26 disclosures – years after those disclosures were made and approximately one week before trial – has the flavor of a "gotcha tactic."  <u>See</u> <u>Alfred v. Caterpillar, Inc.</u>, 262 F.3d 1083, 1087 ("[T]he law traditionally does not reward ambush trial tactics. . . .").  If the Defendants wanted to cut out much of the experts' testimony because of incomplete disclosures, they could have raised the issue during the discovery period.

While the Court finds the non-<u>Daubert</u> portion of the Defendants' motion to be untimely, the Court is cognizant of the potential problem with allowing experts to testify, while taking away important cross-examination tools from the opposing party – tools that the rules of civil procedure are designed to provide.  Accordingly, the Court made a request at the hearing, and repeats that request here, that Vondrak furnish the information regarding past cases in which they have testified and their rates of compensation.  The Court will not compel them to produce this information pretrial.  The Court will, however, permit the Defendants to ask about those topics on cross-examination, and the witnesses will be required to answer unless the Court instructs otherwise.

**II.   THE METHODOLOGY SUPPORTING DR. JAIN'S PROPOSED TESTIMONY THAT THE HANDCUFFING INCIDENT CAUSED A LEFT RADIAL NERVE INJURY IS SOUND UNDER DAUBERT.**

Having cleared up the issues raised in the rule 26-based portion of the Defendants' motion,

the Court considers the challenge raised, pursuant to the Daubert criteria, that a sound methodology does not support Dr. Jain's testimony about the cause of Vondrak's alleged left radial nerve injury, which is based on his follow up consultation with Vondrak.  After studying Dr. Jain's reports, the Court disagrees with the Defendants that there is no sound methodology to support the conclusion that the handcuffing incident caused the left radial nerve injury.

The Supreme Court has set forth non-exclusive list of factors that weigh into a district court's first-step reliability determination, including: (i) whether the method has been tested; (ii) whether the method has been published and subject to peer review; (iii) the error rate; (iv) the existence of standards and whether the witness applied them in the present case; and (v) whether the witness' method is generally accepted as reliable in the relevant medical and scientific community.  See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 594-95.  The Court is also to consider whether the witness' conclusion represents an "unfounded extrapolation" from the data; whether the witness has adequately accounted for alternative explanations for the effect at issue; whether the opinion was reached for the purposes of litigation or as the result of independent studies; or whether it unduly relies on anecdotal evidence.  See Witherspoon v. Navajo Refining Co., LP, 2005 WL 5988649 at *3 (citing Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)).  When these factors are applied, they demonstrate why Dr. Jain's testimony regarding the left radial nerve injury is based on a reliable methodology.

Dr. Jain's tests appear to be based on widely accepted scientific techniques for diagnosing nerve injuries.  When Dr. Jain conducted those tests in 2005, he did not find a left radial nerve injury because his nerve conduction test did not reveal one.  See Dr. Jain's 2005 Report at 2.  His diagnosis of that injury did not come until over three years later, in a follow up consultation.  Nevertheless, as Dr. Jain has testified, the nerve conduction test is only one part of a broader examination for

diagnosing a nerve injury. Aside from conducting the nerve conduction test, Dr. Jain interviews his patient, takes a clinical history, and observes symptoms. Given the nature of the examination, it is possible for an injury to be present even though the nerve conduction test does not show it. Accordingly, the Court believes Dr. Jain has adequately explained why his later diagnosis of the left radial nerve injury is soundly supported, given that he relied on Vondrak recounting his history, including having complained about both wrists. Moreover, Dr. Jain adequately sets forth his reason for concluding that the left radial nerve injury resulted from the handcuffing event.

To opine on causation, Dr. Jain also relied on the same clinical history. He rules out other causes, noting the classes of events that would cause a radial nerve injury. See Dr. Jain's 2005 Report at 3. He states in his report:

> Neither the nature of the patient's work or his recreational activities can be said to be a cause of his nerve injuries because these are normal physical activities that do not place abnormal pressures on the hand or wrist. In addition, the patient's X-Rays do not reveal any kind of a bony or soft tissue abnormality. This indicates that he did not have a predisposition to nerve injury. He did not have a prior fracture of the radius bones in his wrists. He was never subjected to the improper application of a plaster cast, a common cause of nerve injury in persons who may have a broken wrist.

Id. at 3.

Thus, he notes that impacts or compression, such as a cast or handcuffs being placed too tightly, cause radial nerve injuries. See id. at 2. Dr. Jain then notes that Vondrak's clinical history did not reveal any other events that would explain a radial nerve injury. Specifically, Dr. Jain noted that Vondrak's work and recreational activities were inconsistent with such an injury. Dr. Jain further explains that Vondrak displayed no predisposition to such an injury, and no other injuries or fractures that would have caused a radial nerve injury. See id. at 3. What Dr. Jain did, after taking the patient's history and ruling out alternative causes, is not significantly or notably different

than what doctors do routinely in diagnosing their patients' injuries.

Based on Dr. Jain's explanation, he followed a medically accepted procedure for ruling out other causes of Vondrak's radial nerve injury. While there may be some weaknesses, given the lack of a diagnosis of the left radial nerve injury in the first test, the Court believes the best place to explore those weaknesses is in cross-examination. Dr. Jain has done enough to show that he has relied on a scientifically valid method for reaching his conclusion regarding causation.

In sum, the Court believes Dr. Jain has given a reliable, scientific basis for concluding that the handcuffing event caused the left radial nerve injury. Dr. Jain may therefore testify about the cause of the left radial nerve injury that he asserts he observed. Furthermore, the Court will not limit Drs. Jain and Lindsey's testimony on the grounds of incomplete rule 26 disclosure. Nevertheless, the Defendants will be allowed to ask the doctors, on cross examination, about other cases in which they have testified as experts and about their compensation, and the witnesses will be required to answer unless the Court otherwise instructs.

**IT IS ORDERED** that Defendants' Partial Motion in Limine to Exclude Testimony of Dr. Pawain Jain and Dr. Wayne Lindsey is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Barry J. Byrnes

Las Cruces, New Mexico

>   *Attorney for the Plaintiff*

Harry S. Connelly, Jr.
  Deputy City Attorney for the
    City of Las Cruces
Las Cruces, New Mexico

-- and --

William L. Lutz
David P. Lutz
Martin, Lutz, Roggow, Hosford & Eubanks, P.C.
Las Cruces, New Mexico

>   *Attorneys for Defendants City of Las Cruces, Cindy McCants,*
>      *and Nathan Krause*